Smith v. The Western Union Tel. Co. .

ELLIS R. SMITH, Respondent, v. THE WESTERN UNION
TELEGRAPH COMPANY, Appellant.

Kansas City Court of Appeals, January 8 and March 26,
1894.

1. **Telegraphs :** COMMON CARRIERS: DIFFERENT DOCTRINES. The
former doctrine was that the legal *status* of a telegraph company
was that of a common carrier, but the recent doctrine is that, while it
is analogous to a common carrier, it is not responsible as an insurer
and is only liable for negligence or failure to use due care.

2. ———: PRIMA FACIE CASE: HOW REBUTTED. A *prima facie* case is
made against a telegraph company when it admits the delay in
sending the dispatch it had received; but when it proves that the
agents in the sending and receiving offices were careful and at their
posts and performing their duties, and the instruments in said offices
in good repair and working order, and the natural and reasonable
inference is that the failure of the wire to transmit the call of the
sending office was an interference of some supervening agencies that
are often unknown and undiscoverable, it has rebutted the *prima
facie* case.

3. **Definitions:** INTERFERENCE: PRESUMPTION. *First.* An inference is
a deduction which the reason of the jury makes from the facts proved
without an express direction of law to that effect, in other words, a
conclusion in favor of the existence of one fact from others proved.
*Second.* A presumption of fact is a logical argument from a fact to a
fact, or an argument which infers a fact, otherwise doubtful, from a
fact which is proved.

4. ———: NEGLIGENCE: STATUTORY PENALTY. If there is no negligence
on the part of a telegraph company in sending a message, there is no
liability by it for the statutory penalty for delay.

5. ———: ———: ———. In an action against a telegraph company
for the statutory penalty for delay in transmitting a message it is
proper to tell the jury that if the wires, instruments and electric
apparatus between the sending and receiving offices were not in
working order, and, without knowledge of this the defendant's agents
in the sending office made in good faith proper efforts to call the
receiving office and transmit the message but were unable to do so
by reason of said apparatus being out of order so that the receiving
agent could not know of such calls, the finding must be for the
defendant.

6. ———: UNABLE TO SEND MESSAGE: STATUTE: SCIENTER. When an application is made to a telegraph company to send a dispatch, the statute makes it the duty of the receiving agent to plainly inform the applicant that the line is not in working order, if such is the fact; and this is an excuse for not sending. If the agent does not know, and can not know, that the line is not in working order, this statutory duty is not imposed.

7. ———: STATUTORY PENALTY: JUDGMENT. In an action for statutory penalty for delay in sending a message, the judgment should be for the penalty, one-half of which must be adjudged to the county school fund.

*Appeal from the Pettis Circuit Court.*—HON. R. H. FIELD, Judge.

REVERSED AND REMANDED.

*Charles E. Yeater* for appellant.

(1) A telegraph company is not liable for a failure to transmit a message when its line is not in working order and the transmission is thereby prevented, if the message was taken in good faith and without any knowledge of such condition of the line on the part of the company's agents. The court, therefore, erred in refusing defendant's second declaration of law and thereby ignoring the undisputed facts in the case which established the impossibility of sending the message in question. R. S. 1889, sec. 2727. (2) The court below held the defendant liable against the law on the theory that the defendant telegraph company having received the message was bound as a common carrier to transmit it to its destination. Gray's Communication by Telegraph, p. 19, and cases cited; Thompson on Law of Electricity, sec. 137, *et seq.*, and cases cited. (3) The evidence in this case consists of certain admissions of both parties and of certain undisputed facts established mainly by the employees of the telegraph company and by expert elec-

tricians, and upon this evidence, out of which no question of fact can arise, the finding and judgment under the law should have been for the company, and the judgment should be reversed and not remanded. The appellate court, therefore, in this instance should review the action of the trial court, and in the words of R. S. 1889, section 2304, should "give such judgment as such court ought to have given, as to them shall seem agreeable to law." *Musser v. Harwood,* 23 Mo. App. 495; *Bruen v. The Kansas City Fair Ass'n,* 40 Mo. App. 425; *Henry v. Bell,* 75 Mo. 199; *Knapp Stout & Co. v. Standley,* 45 Mo. App. 268.

*George F. Longan* and *J. T. Montgomery* for respondent.

(1) The trial court committed no error in refusing appellant's second and third instructions. There was no evidence upon which to base either instruction. (2) If the line was not in working order it was the plain duty of the appellant to so inform the respondent. R. S. 1889, sec. 2727.

SMITH, P. J.—This is an action by the plaintiff against the defendant, a telegraph corporation, based on section 2725 Revised Statutes, to recover the penalty therein provided for a failure on the part of defendant to transmit a certain dispatch received by the latter from the former promptly and with impartiality and good faith.

It appears from the bill of exceptions that at five minutes past 2 o'clock on the thirteenth day of November, 1889, the defendant at Sedalia in Pettis county received a dispatch from the plaintiff addressed to George C. Jones at Pilot Grove, situate in the adjoining county of Cooper. It was admitted that the agents of defendant at Sedalia on receiving the message made

efforts at once to call the Pilot Grove office and continued to make efforts at reasonable intervals from that time until about twenty minutes after 9 of that evening but at no time were they able to get the Pilot Grove office so that they could send the dispatch; and, that at no time did the agents of defendant at Sedalia know of any cause which prevented the Pilot Grove office from being called. The dispatch was not received at Pilot Grove until the next day after it had been delivered to defendant at Sedalia. The uncontradicted evidence of the defendant's agent at Pilot Grove was that he was at work in his office all day and until 9 o'clock in the evening on the thirteenth of November, the day the dispatch was delivered to the defendant; that he was engaged in sending messages to other points and that if the calls of the Sedalia office were made he did not hear them; that the wires and instrument worked all right on that day so far as he could see; that, if the calls were made, something beyond his ability to explain caused the break in the service and prevented him from hearing the call; that the first call he received from the Sedalia office was on the next day when the dispatch in question was sent and received. He further testified that if the calls had been made on the day of the delivery of the dispatch he would have received them, unless there was something the matter with the wires or the instruments somewhere. It was not disputed but that the defendant's agent at Pilot Grove was an attentive, sober and competent operator. It appeared from the testimony of a number of experts in the art of telegraphy that it was a fact of common occurrence, well known to electricians that the electric current may be wholly or partially lost from telegraph wires by various extraneous causes which are unknown and undiscoverable and that when the current is wholly lost from a wire it is impossible

to transmit telegraphic signals. Not only this, but that a receiving telegraphic instrument must be kept in such a state of adjustment that the spring which holds back the armature from the magnet shall in its tension have less strength than that possessed by the operating current; otherwise the signals for the letters could not be made by the armature striking the magnet when the current is closed. And, further, that, if a receiving instrument was in such proper adjustment with the current of the wire, the signals could be heard by reason of the superior strength of the current as compared with the tension of the armature spring; and that while so being by temporary contact by a foreign object with the wire between two telegraph stations, such as a wet tree or a rope or a piece of wire lying closely on the ground and attached to the wire, or defective insulation of the wire, or anything that would afford a path between the wire and the earth, or an electric condition of the atmosphere, the current would in some cases be wholly lost while in others it would be so weakened by partial loss that the remaining current would have less force than the tension of the spring of the receiving instrument; that, where such condition results, the sending office can not call the receiving office and the operator at the receiving instrument would not necessarily know of such interfering conditions. The weather it was admitted was fair on the day the dispatch was received.

Upon substantially this state of facts the court sitting as a jury was asked by the defendant to declare the law to be that: "If from all the evidence it appears that the wires, instruments or electric apparatus of defendant used between the Sedalia and Pilot Grove offices were not in working order on the afternoon of the day in question, and that not knowing this the defendant's agents in its Sedalia office made, in good faith, the proper efforts to call the Pilot Grove office

and transmit the plaintiff's message, but were unable to do so on that afternoon by reason of said apparatus not being in working order, so that the company's agent at Pilot Grove could not know of such calls then the finding must be for the defendant company." The court refused this declaration. The plaintiff had judgment and defendant appealed.

It was formerly held that the legal *status* of a telegraph company was that of a common carrier. *Parks v. Tel. Co.*, 13 Cal. 422; *Telegraph Co. v. Fontain*, 58 Ga. 433, and other cases cited in note 1 of sec. 6 of Gray's Com. by Telegraph. But the generally accepted doctrine, both in this country and Great Britain now is that, although a telegraph company is analogous to a common carrier in its undertaking and consequent obligation to serve the public, it is not responsible as an insurer for what is intrusted to it. It is only liable for losses occasioned by its negligence, or, which is the same thing, through its failure to use due care. *Tel. Co. v. Dryburg*, 35 Pa. St. 298; *Passmore v. Tel. Co.*, 78 Pa. St. 238; *DeRutte v. Tel. Co.*, 1 Daily, 547; *Ellis v. Tel. Co.*, 13 Allen, 226; *Grinnell v. Tel. Co.*, 113 Mass. 299; *Tyler v. Tel. Co.*, 60 Ill. 421; *Tel. Co. v. Griswold* 37 Ohio St. 301; *Bartlett v. Tel. Co.*, 62 Me. 209; *Tel. Co. v. Null*, 57 Tex. 283; *Tel. Co. v. Reynolds*, 77 Va. 173; *Playford v. Tel. Co.*, 4 L. R. Q. B. 706. In an action for the breach of an ordinary contract the plaintiff establishes a *prima facie* case by proving the formation and the nonperformance of the contract. Gray's Com. by Telegraph, sec. 28; *Baldwin v. Tel. Co.*, 45 N. Y. 744; *Tel. Co. v. Winger*, 55 Pa. St. 262; *Tel. Co. v. Lindley*, 62 Ind. 371; *Tel. Co. v. Carew*, 15 Mich. 525. So that the plaintiff's *prima facie* case of negligence was established by the admissions of the defendant to the effect that there was a delay of fifteen hours in sending plaintiff's dispatch after receiving it. *Tel.*

*Co. v. Scirch*, 103 Ind. 227; *Harkness v. Tel. Co.*, 73 Iowa, 190. The plaintiff having thus proved his *prima facie* case, it devolved upon defendant in order to exonerate itself, to prove that the breach was not due to negligence on its part. Gray's Com. by Telegraph, sec. 26; *Baldwin v. Tel. Co., supra; Tel. Co. v. Winger, supra; Leonard v. Tel. Co.*, 41 N. Y. 544; *Turner v. Tel. Co.*, 41 Iowa, 458; *Reliance Lumber Co. v. Tel. Co.*, 58 Tex. 394.

Where an application is made to a telegraph company to send a dispatch, the statute makes it the duty of the agent receiving the same at that station plainly to inform the applicant that the line is not in working order, if such is the fact. R. S., sec. 2727. This is an excuse for not sending the dispatch. But, where the agent does not and can not know that the line is not in working order, this statutory duty is not, of course, imposed. This action is, however, not based on that section of the statute and hence it is inapplicable,- except to show that when the wire is not in working order it is available to the telegraph company, as an excuse for not sending a dispatch, to establish that fact.

The conceded fact was that the agents of the defendant at Sedalia were guilty of no negligence in their efforts to call the Pilot Grove office. And it is the undisputed evidence of the operator at Pilot Grove that he was in his office on the day the Sedalia office called him for the purpose of sending plaintiff's dispatch and that if such calls had been made he would have heard them, unless the receiving instrument or the intervening wire was out of order,, of which, if so, he had no knowledge. The instruments at both the sending and receiving offices were as far as the operators thereof could tell in condition to transmit and receive dispatches.

Suppose the evidence established to the satisfaction of the court these two facts, could the existence of the further fact that the intervening wire was out of working order in consequence of the operation of some one of the interfering causes which the experts testified were of frequent occurrence on telegraph lines, be reasonably inferred?

An inference is defined by section 1957 of the New York Code of Civil Procedure to be a deduction which the reason of the jury makes from the facts proved, without an express direction of the law to that effect. In Wharton on Evidence, section 1226, a presumption of fact is defined as a logical argument from a fact to a fact, or an argument which infers a fact, otherwise doubtful, from a fact which is proved. An inference has also been defined to be a conclusion in favor of the existence of one fact from others proved. *Tanner v. Hughes,* 53 Pa. St. 289. By these definitions of that term it will be readily understood what is meant whenever it is employed by us in expressing our views of the law in respect to this case.

The evidence makes it quite clear that the failure to transmit the plaintiff's dispatch was not occasioned by the negligence of the defendant's agents, either at the sending or receiving office. Does it not result as an inevitable inference from these facts that an interference, somewhere on the line between these offices, caused the wire to be out of working order and so prevented the transmission over it? It seems to us that when these facts are established, by the evidence, to the satisfaction of the jury, or the court sitting as a jury, that the natural and reasonable inference to be deduced would be that the failure of the wire to transmit the call of the sending office was on account of an interference with it by some one of

the supervening agencies mentioned in the testimony of the expert witnesses as of common occurrence on telegraph lines. The facts proved, with that inferred therefrom, would rebut the plaintiff's *prima facie* case.

If the wire was out of working order and that condition was brought about by no fault of the defendant, but by interfering causes like those we have referred to which it could not by reasonable diligence guard against, then.the defendant was not guilty of negligence for the failure to promptly transmit the dispatch during the existence of such condition. *DeRutte v. Telegraph Company*, 1 Daily, 545. If there was no negligence on the part of defendant there was no liability by it for the statutory penalty. It results, we think, from these considerations that the defendant was, under the evidence adduced, entitled to have its case considered. by the trial court upon the theory outlined in its rejected declaration. It was an excuse for the nonperformance of the duty alleged by the plaintiff that the wire was out of working order and the defendant was entitled to have considered the evidence conducing to establish that fact.

As this case must be reversed and the cause remanded, it is proper to say that it is apparent upon the face of the record that the judgment is erroneous in form and substance. We have not been permitted to see the pleadings, since they are not found in the abstract; but we are told in the undisputed statement of the case made by defendant that the action is for the recovery of the two hundred dollar penalty provided by section 2725, Revised Statutes. Now the judgment is in favor of the plaintiff for $100. The statutory penalty denounced is $200. If the plaintiff is entitled to recover, the judgment must be for the entire amount of that penalty, one-half of which must be adjudged to the school

First Nat. Bank of Nevada v. Gardner.

fund of Pettis county in accordance with the requirements of the section giving it. Why the court should adjudge to the plaintiff one hundred dollars damages when the action is not for damages at all, but for a specific penalty, is beyond our comprehension. The case was not and could not have been tried on any such theory. No such judgment could have been rightly rendered in the case. If the defendant was guilty of the negligence complained of, then the county public school fund was entitled to one-half of that penalty. A judgment awarding one-half of the penalty to the plaintiff and omitting to adjudge the other half to the school fund is erroneous and can not be permitted to stand. *Kendall v. Telegraph Company*, 56 Mo. App.——. The penalty can not be split so as to deprive the school fund of its statutory share thereof.

The judgment will be reversed and the cause remanded. All concur.