# LEVY BROS. v. WESTERN UNION TELEGRAPH CO.

### No. 2861.    Opinion Filed September 23, 1913.·

### (135 Pac. 423.)

1. **TELEGRAPHS AND TELEPHONES—Incorrect Transmission of Message—Damages Recoverable.** L. Brothers, real estate agents, wired W., the owner of real estate, for his best sale terms ou same; W. replied as follows: ''$10,000.00, net, one-half down, balance 8 per cent. annually,'' etc.   The telegraph company in the transmission of the message omitted the word ''net'' therefrom.   L. Brothers on receipt of the telegram sold the property to E., and endeavored to collect their commission from W.   During the negotiations, but prior to the consummation of the sale, the omission was discovered.   Having made a price to the purchaser, L. Brothers could not refuse to complete the deal, while W., having named a ''net'' price, was not liable.   **Held**, under the facts the telegraph company was liable in damages to the sendees for the actual value of their services up to·the time they discovered the omission of the word from the telegram.

2. **SAME—Notice.** In order to render the telegraph company liable for damages in such case, it is not necessary that it have notice of the details of the transaction mentioned in the telegram, or of the particular damage likely to follow from an improper transmission or delivery of a message.   It is sufficient if the damages claimed are such as might reasonably be expected to result from the circumstances.

3. **SAME—Action for Damages—Evidence.** When a telegraph company fails to properly and correctly transmit a message, the proof of that fact is prima facie evidence of its negligence.

4. **SAME—Nature.** Such an action, by the sendee against the telegraph company, is one sounding in tort, and is not one for breach of contract.

5. **SAME—Measure of Damages.** The measure of damages in such case is the actual damage which the sendee.suffers up to the time of notice of the omission of the word from the telegram.

6. **TRIAL—Instructions—Pleading and Proof.** Instructions examined, and held erroneous.

(*Syllabus by Robertson, C.*)

*Error from Superior Court, Oklahoma County;*
*Edward Dewes Oldfield, Judge.*

Action by Levy Brothers against the Western Union Telegraph Company.   Judgment for defendant, and plaintiffs bring error.   Reversed and remanded.

*W. F. Wilson, John Tomerlin,* and *H. E. Elder,* for plaintiffs in error.

*Shartel, Keaton & Wells* and *Geo. H. Fearons,* for defendant in error.

Opinion by ROBERTSON, C.   On April 13, 1910, the plaintiffs, Levy Brothers, brought suit against the defendant, the Western Union Telegraph Company, and sought thereby to recover damages in the sum of $500 on account of alleged negligence in the transmission of a telegram.   The plaintiffs were engaged in the real estate business in Oklahoma City.   They had a client by the name of E. A. Wilson residing at Salem, W. Va., who owned a lot located at the corner of Reno and Hudson streets in Oklahoma City.   On March 9, 1909, plaintiffs sent Mr. Wilson by defendant company the following telegram:

"E. A. Wilson, Salem, W. Va.   Wire best price and terms on Reno and Hudson corner.   Levy Brothers."

On the next day they received the following answer:

"Salem, W. Va., March 10, 1909.   Levy Bros., Oklahoma City, Okla.   Ten thousand dollars, one-half down, balance eight per cent annually time two to five years.   E. A. Wilson."

Thereafter plaintiffs wired Mr. Wilson to confirm a sale of the property as follows:

"March 18, 1909.   To E. A. Wilson, Salem, W. Va.   Closed deal, Reno and Hudson corner ninety-five hundred net—twenty-five hundred cash—two thousand one year—Bal one to five years at eight per cent interest on or before—parties are going to improve.   .Confirm by wire.   Levy Brothers."

To which the following reply was received:

"Salem, W. Va., March 19, 1909.   Levy Bros., Oklahoma City, Okla.   Price and terms in former telegram a few days ago if cant sell accordingly deal is off.   E. A. Wilson."

Upon receipt of this telegram Levy Brothers closed the deal with the prospective purchaser, Eisman, on the terms named in the first telegram from Mr. Wilson.   The evidence shows that the telegram sent by Mr. Wilson to plaintiffs on March 10, 1909, did not correspond with the telegram which Mr. Wilson de-

livered to defendant at Salem, W. Va., for transmission. On the contrary, the one he delivered to the defendant on said date read as follows:

"Levy Brothers, Oklahoma City, Okla. Ten thousand dollars net, one-half down balance eight per cent annually time two to five years. E. A. Wilson."

The difference being that the message delivered to Levy Brothers did not contain the word "net," which word was omitted by the defendant in transmitting the telegram. Plaintiffs contend that, when they were informed by Mr. Wilson that he would take $10,000 for the lot, they expected, as was the custom in their business, to collect their commission from him out of said sum.

Before the sale was consummated, plaintiffs were informed of the omission of the word from the telegram by a letter from Mr. Wilson; but, they having before that time offered the property to Eisman for $10,000, and he having agreed to take the same, subject to some slight change in the terms of payment, they were precluded from charging him a commission, nor could they then raise the price so as to include a commission, and Wilson, having quoted a *net* price, was not liable for the commission. Thus, plaintiffs allege, they were, by the negligence of the defendant company, prevented from collecting a commission that had been earned. The sale was completed, and plaintiffs received no compensation for their services; they in the meantime having decided to look to the defendant company for their damages, rather than prevent the consummation of the sale, which could then only be done by a violation of their offer to Eisman.

The defendant admits that the word "net" was omitted in the transmission of the message, but denies liability, on the ground that plaintiffs had full knowledge of the omission of the word from the telegram prior to the time the sale was concluded. This information was imparted to them by a Mr. Gains, who participated in the writing and sending of the telegrams to plaintiffs, and who on March 11, 1909, made a copy of the original telegram which contained the missing word, and sent

the same to Levy Brothers; the deed to the lot was not executed by Mr. Wilson until something like three weeks after the mailing of the copy of the original Wilson telegram to plaintiffs by Gains.

The testimony of Mr. Gains (Record, pages 25-27) and of Mr. Sam Levy (Record, page 31) shows that the copy was actually sent to and received by Levy Brothers prior to the final consummation of the sale. The defendant contends that by reason of this information plaintiffs were put on notice of the omission of the word from the telegram, and were in fact fully informed of the terms of sale imposed by Mr. Wilson, and that it was their duty, after being apprised of that fact, to protect themselves, either by adding the amount of their commission to the sale price, or by making arrangements with the purchaser for the payment of the same, or otherwise.

Plaintiffs insist that the negligence of the defendant company prevented them from increasing the sale price, for that they had, on receipt of the first telegram from Mr. Wilson, submitted the price of the property to the prospective purchaser, and had in fact made the sale, save only as to the amount of cash payment required, and the time of payment on the balance, and that these conditions and requirements were acceded to by the purchaser on receipt of Mr. Wilson's second telegram, which was received by Levy Brothers prior to the receipt of the Gains letter, with its notice of the omitted word, and which, it seems to be conceded by all, was supplementary to and in fact only emphasizing the terms of the first, the contents of which had then been made known to the purchaser, and who had acted thereon, and accepted the terms thereof, except, as above stated, as to the amount of cash payment, and terms on the balance.

The defendant insists that, before plaintiffs would be entitled to recover under the facts of this case, they must show in addition to what has already been shown that they would have sold the lot to Eisman for $10,500; that they had full authority to consummate the sale at the time the first message was sent. It also contends that the sale was completed with full knowledge of the omission of the word from the telegram, and that the

record is barren of evidence showing that the sale could not be completed on the corrected basis after knowledge of the error was obtained.

Under the admitted facts of this case we do not think a consideration of the foregoing points necessary in order to arrive at a correct determination of the issues presented by the record. Plaintiffs, after having submitted the property to the purchaser at $10,000, were morally and legally bound, so far as this record discloses, to complete the deal. Defendant will not be heard to say here that plaintiffs should have violated a moral (or legal) duty in order to collect their commission, especially when its own negligence was the occasion of the conditions that demanded such conduct on their part.

To our minds it is clear that plaintiffs are entitled to a recovery, but only for the amount they were damaged by the omission of the word from the original Wilson telegram, which would be the value of their services up to the time they were informed or could be charged with notice of its omission, and thus placed in a position to protect themselves. Until that time they had a right to rely upon the terms of the original telegram, and, had the sale been fully consummated before they received notice of the omission, they undoubtedly would have been entitled to a full recovery for their services rendered. It is no defense to plaintiffs' action to say that there was no written contract of authority between them and Mr. Wilson to sell real estate, or that there was no binding contract in writing made between the seller and the prospective purchaser, or that plaintiffs were acting for both parties, and therefore not entitled to recover for their services. These are matters that could be waived by the parties, and, inasmuch as the trade was finally consummated, it is presumed that the requisite contracts were made or waived by the interested parties; but of this the defendant company cannot inquire.

This action is not to recover damages for the breach of a contract, but is one sounding in tort for the negligence of defendant company in preventing the making of a contract which, the record shows, would have been made had the mes-

sage been delivered as sent. *Fitch v. W. U. T. Co.,* 150 Mo. App. 149, 130 S. W. 44; *Gray v. W. U. T. Co.,* 108 Tenn. 39, 64 S. W. 1063, 56 L. R. A. 301, 91 Am. St. Rep. 706.

"The telegraph company is liable for the damages proximately caused by its negligent nondelivery of a telegram. If the proximate result of the nondelivery of the offer is to prevent the making of a contract, it seems to us that the telegraph company ought to be liable for the damages caused by the loss of the contract." (*W. U. T. Co. v. Sights,* 34 Okla. 466, 126 Pac. 236.)

This principle is also supported by the following authorities: *Thorp v. W. U. T. Co.,* 118 Mo. App. 398, 94 S. W. 554; *Propeller Tow-Boat Co. v. W. U. T. Co.,* 124 Ga. 478, 52 S. E. 766; *Wallingford v. W. U. T. Co.,* 60 S. C. 201, 38 S. E. 443, 629; *Larsen v. Postal Tel. Cable Co.,* 150 Iowa, 748, 130 N. W. 813; *Texas & W. T. & T. Co. v. Mackenzie,* 36 Tex. Civ. App. 178, 81 S. W. 581; *Postal Telegraph-Cable Co. v. Louisville Cotton Oil Co.,* 136 Ky. 843, 122 S. W. 852, 125 S. W. 266; *Western U. T. Co. v. Williams,* 57 Tex. Civ. App. 267, 122 S. W. 280.

This principle and these authorities govern the question presented in this action. The effect of the omission of the word "net" was the loss of the contract to Levy Brothers, and the measure of their damages would be that amount which might reasonably be anticipated, and which would be the direct and proximate loss to them, by reason of the breach of duty on the part of the defendant company.

As was said in *W. U. T. Co. v. Sights, supra:*

"In a case where the telegram merely makes an offer, the company knows that an offer has been made, which may result in an acceptance if it does its duty. It is its duty to exercise the highest care to deliver the message; and, if it fails to do so, it must know that the contract will not be made, and therefore that loss may follow. It does not know that loss will surely follow; but it does know that loss may follow, and that its negligence may prevent the opportunity of making a contract. If, therefore, on the trial it is established that a contract would have been made had the telegraph company discharged its duty, it does not seem to us that the company is in a position to say that it did not discharge its duty, and therefore no contract

was made, and therefore no damages proximately resulted, because this defense is based upon the assertion of its own negligence, and it takes advantage of its own wrong to defend against the consequence of its wrong. We therefore hold that, when the message which is not delivered is a mere offer of a contract, the telegraph company, for its negligence, is liable in damages, if its negligence prevented the making of the contract."

That the negligence of defendant company in the omission of the word "net" from the telegram from Wilson to plaintiffs prevented plaintiffs from making a contract that would have secured to them a commission for the sale which they, in fact, effected is clearly apparent from the record, and to our minds the attempt now by the defendant company to escape liability for its confessed negligence in the transmission of the message by alleging that plaintiffs had full knowledge of the omission of the word from the message prior to the final consummation of the sale is not warranted by law or good conscience, but would be the taking advantage of its own wrong to defeat the consequences of its admitted negligence. The fact of notice of the omission having been brought to plaintiffs' attention before the final consummation of the sale would be competent and material evidence for the purpose of tending to lessen the amount of their recovery, and reduce or minimize defendant's liability. We are firmly of opinion that plaintiffs are entitled to recover such damages as they can prove accrued to them up to the time they received notice of the omission of the word "net" from the telegram from Mr. Wilson.

This is especially true when defendant, as in the case at bar, has notice of the nature of the transaction involved, and it has been very generally held by the courts that, in order to render a telegraph company liable for a neglect of its duty in such cases as this, it is not necessary that it have notice of the details of the transaction, or of the particular damages likely to result from an improper transmission or delivery of a message. It is sufficient if the damages claimed are such as might reasonably be expected to result from the circumstances. In this case it is clearly apparent that the word "net" as contained in the original Wilson telegram in answer to the inquiry

from plaintiffs, which also had been transmitted by defendant, had a special significance, and yet was of such ordinary and common use as to impart to defendant the knowledge that the owner of the lot was offering the same for sale at a certain "net" price in money, the exact amount of which he demanded,. and was to receive, being named in the message, and defendant was bound to give the ordinary meaning to the word "net" as its use in the telegram would require. Had the seller been quoting the price of the lot to plaintiffs as prospective purchasers, instead of as real estate agents, it would have been unnecessary to use the word "net"; by its use notice was given the defendant of the nature and character of its meaning as used in the telegram, and, had the inquiry been by prospective purchasers, in that capacity, the use of the word would have been superfluous. As used, it had a peculiar, yet well-known and understood meaning, and the defendant company stood charged with knowledge of that meaning, and to omit the same from the message was to change its entire sense, so far as the parties were concerned, and the telegram delivered to plaintiffs did not convey the thought the sender intended to convey, but, on the contrary, conveyed a meaning wholly intelligible, upon which the sendees, under the circumstances of the case, relied, and upon which they had a right to rely and act, and by so doing were damaged. See *W. U. T. Co. v. True* (Tex.) 148 S. W. 561, 41 L. R. A. (N. S.) 1188.

From the foregoing it is apparent that the court erred in refusing to give plaintiffs' requested instruction No. 4, which reads as follows:

"I charge you, gentlemen of the jury, that, if you believe that the telegram delivered to the defendant at Salem, W. Va., which was in substance as follows: 'Levy Brothers, Oklahoma City, Okla. Ten thousand dollars net. One-half down, balance eight per cent interest annually. Time two to five years. E. A. Wilson'—and that said telegram as delivered by the defendant to the plaintiffs in Oklahoma City, Okla., omitted the word net therefrom, then I charge you that this constitutes a *prima facie* case of negligence, and that the burden is upon the defendant to show that it was not negligent in the transmission of the tele-

gram. And if the defendant does not explain to your satisfaction that it was not negligent in the transmission of said telegram, then the fact that it was not delivered here as it was received by the defendant in Salem, W. Va., would constitute a *prima facie* case, as above stated, of negligence on the part of the said defendant, and the defendant would be liable to the plaintiffs for whatever damages were sustained by them by reason of the said negligence of the said defendant. Refused, and exceptions to plaintiffs. Edward Dewes Oldfield, Judge."

This instruction states the true rule of law applicable to the facts of this case. When the defendant company failed to correctly transmit a message, the proof of that fact is *prima facie* evidence of its negligence, and shifted the burden of proof, under the issues formed by the pleading, from the plaintiffs to the defendant, and the trial court should have so instructed the jury. *Strong et al. v. W. U. T. Co.,* 18 Idaho, 389, 109 Pac. 910, 30 L. R. A. (N. S.) 409, Ann. Cas. 1912A, 55; *Reed et ux. v. W. U. T. Co.,* 135 Mo. 661, 37 S. W. 904, 34 L. R. A. 492, 58 Am. St. Rep. 609. In the last case it was said by the court:

"Having reached the conclusion that the defendant was bound to exercise ordinary care in transmitting the message to plaintiffs, the next inquiry arises, Was there sufficient evidence to justify the verdict? Did plaintiffs establish a *prima facie* case? It was established beyond peradventure that the message was not transmitted as it was delivered to defendant; that plaintiffs acted upon it as received by them. When this was shown, a *prima facie* case of negligence was established, and the burden of disproving the negligence was cast upon defendant, and it made no explanation whatever. *Telegraph Co. v. Blanchard,* 68 Ga. 299 [45 Am. Rep. 480]; Gray Com. Tel. sec. 77, and authorities cited; *Tyler v. Telegraph Co.,* 60 Ill. 421 [14 Am. Rep. 38]; *Smith v. Telegraph Co.,* 57 Mo. App. 259; *Telegraph Co. v. Griswold,* 37 Ohio St. 301-313 [41 Am. Rep. 500]; *Bartlett v. Telegraph Co.,* 62 Me. 209 [16 Am. Rep. 437]; *Telegraph Co. v. Carew,* 15 Mich. 525."

Complaint is also made of the giving of instruction No. 4, which reads as follows:

"You are instructed that before the plaintiffs can recover damages on account of the error in the message—and the fact that there was an error in the message is not disputed by the evidence—you must first find and believe that the plaintiffs have

established by a preponderance of the evidence that had the message been properly sent that they could and would have consummated the sale of the property for the price of $10,500, and the plaintiffs had a certain and completed contract with the seller by which they were entitled to receive a commission of $500 as alleged. Excepted to by plaintiffs, and exception allowed. Edward Dewes Oldfield, Judge."

For the reasons heretofore given, this instruction was an erroneous statement of the law governing this case; it required the jury to find that, had the message been properly transmitted, the plaintiffs would have consummated the trade for $10,500, and that Levy Brothers had a contract with Wilson to pay them $500 commission for making the sale. Had this been an action for breach of contract, there might possibly have been some reason for this instruction; but as we have seen it, it being an action in tort, it is a matter of no moment whether plaintiffs could have sold the property for $10,500, or whether they had or had not a contract with Wilson for the payment of a commission. Plaintiffs are entitled to recover their damages, if they can show any, by reason of the neglect of defendant to perform its plain duty. This amount, under the pleadings, might be merely nominal, or it might be the full amount sued for; the amount, however, is a matter for the jury to determine from the facts and circumstances of the case. This instruction in effect precludes any recovery by plaintiffs, and raises issues not framed by the pleadings, and is therefore highly prejudicial to the plaintiffs.

For the same and other reasons, instruction No. 6 of the court's general charge, which reads as follows:

"You are instructed that, in order to create a binding contract, all the essential terms of the agreement must be consented to and agreed upon. That is, the exact price to be paid, the exact property to be sold, the terms of payment, and the terms of sale must all be fully and mutually agreed upon in a substantial way before there can be said to be a contract in law. Excepted to by plaintiffs, and exception allowed. Edward Dewes Oldfield, Judge"

—was prejudicial to plaintiffs' rights. No such contract as defined in this instruction was necessary between plaintiffs and Wilson; none was alleged; and no effort was made to prove one.

This, in effect, was an instruction for a directed verdict for defendant, and was therefore error.

The next error complained of is the giving of instruction No. 7 of the court's general charge. Said instruction reads as follows:

"The court instructs you that it is inconsistent for the agent to represent conflicting interests, and, if you believe that the plaintiffs herein were, during the negotiations, acting as agents for both the buyer and seller, they cannot recover in this action, unless it is further shown affirmatively that both buyer and seller consented thereto with knowledge. Excepted to by plaintiffs, and exception allowed. Edward Dewes Oldfield, Judge."

There is not a word of testimony in the record, so far as we can find, authorizing the inference that plaintiffs had acted as agents for both parties. The only result of such an instruction is to create a false issue for the jury to consider and thereby prejudice plaintiffs' rights, and hence the giving of the same was error.

It is apparent that further consideration of the alleged errors is unnecessary. It is evident that the entire charge of the court was given under a misapprehension of the law applicable to the facts of the case.

Inasmuch as the cause should be reversed and remanded for a new trial, no good results will be obtained by a consideration of the remaining assignments, all of which are based on the same grounds as those already disposed of. At the next trial these questions will not present themselves to the court, and we therefore will not discuss them further here.

From a consideration of the entire record, we find that the cause was by the trial court submitted to the jury on a theory wholly inconsistent with the law applicable to the facts, and the judgment should be reversed, and the cause remanded for a new trial, in accordance with the views expressed in this opinion.

By the Court: It is so ordered.