[Civ. No. 2315. Third Appellate District.—June 25, 1921.]

## E. B. CORNELL, Respondent, v. WESTERN UNION TELEGRAPH COMPANY (a Corporation), Appellant.

[1] TELEGRAPH CORPORATIONS—DELAY IN DELIVERING TELEGRAM—LOSS OF OPTION TO PURCHASE CATTLE—MEASURE OF DAMAGES.—In an action against a telegraph company for damages alleged to have been caused by the failure of the defendant to promptly deliver a telegram in which plaintiff was advised of the acceptance of his application for a loan, as a result of which plaintiff was prevented from exercising an option to purchase certain cattle, the measure of damages is the difference between the contract or option price of the cattle and the market value of similar cattle at the time and place of delivery, at the time or after the telegram was delivered, and not the probable profits that plaintiff might have derived from pasturing and taking care of said cattle.

[2] ID.—SPECIAL DAMAGES—PLEADING AND PROOF.—If it can be said that, under peculiar circumstances, a plaintiff who has been prevented by the negligence of a telegraph company from purchasing stock, may recover as damages the profit which he might reasonably expect to derive in the future by reason of increasing their value through his own efforts, there should be allegation and proof of such peculiar circumstances; but to contend with any plausibility that such theory is applicable to the facts of this case it would be necessary at least to show that plaintiff could not obtain said or similar cattle by the exercise of reasonable diligence. No negligence on the part of the telegraph company would absolve plaintiff from the duty to exercise ordinary care to avoid injury.

APPEAL from a judgment of the Superior Court of Tulare County. J. A. Allen, Judge. Reversed.

The facts are stated in the opinion of the court.

Russell & Heid, Charles G. Lamberson and Beverly L. Hodghead for Appellant.

Middlecoff, Scott & Ham for Respondent.

1. Loss of profits due to delay in delivery of telegram as element of damages, notes, 10 Am. St. Rep. 778; 117 Am. St. Rep. 286; Ann. Cas. 1914A, 1297.

BURNETT, J.—The action was for damages caused by the failure of defendant to promptly deliver a telegram, and plaintiff had judgment for the sum of $534, from which the appeal is taken. The telegram was left at the office of L. N. Cornell, a brother of plaintiff, who was away at the time, and was not delivered to plaintiff until several days thereafter. The telegram was sent by one W. H. Coffinberry from South San Francisco, and related to a loan of $5,000 from the South San Francisco Cattle Loan Co., for which plaintiff had made application to enable him to purchase some cattle.

As to the damage suffered by plaintiff the court found: "That on the 27th day of September, 1916, plaintiff held an option from D. H. McLemore to purchase from him 178 cattle, consisting of red heifers which were then located in the state of Oregon; that said McLemore had agreed with plaintiff to sell cattle to plaintiff within five days from said date for the price and sum of $5,000, and deliver said cattle to plaintiff at Porterville, California, freight paid; that said cattle were reasonably worth to plaintiff at said time the sum of $5,534; that plaintiff had abundant feed at said Porterville with which to feed said cattle; that said plaintiff would have made a profit on said cattle of $534. . . .

"That between the said 27th day of September and said 4th day of October, 1916 (the date when said telegram was delivered to plaintiff), said plaintiff's option and opportunity to purchase said cattle expired, and by reason of the fact that defendant did not deliver said message to plaintiff, plaintiff did not know that said South San Francisco Cattle Loan Co. had approved plaintiff's application for said loan, and plaintiff did not have the money otherwise to pay for said cattle, and thereby lost the option and opportunity to purchase said cattle, to plaintiff's damage in the sum of $534."

[1] The trial court apparently adopted an erroneous theory as to the detriment caused to plaintiff by the negligence of defendant. The court seems to have applied the rule found in section 3308 of the Civil Code, providing as follows: "The detriment caused by the breach of a seller's agreement to deliver personal property, the price of which has not been fully paid in advance, is deemed to be the excess, if any, of the value of the property to the buyer,

over the amount which would have been due to the seller under the contract, if it had been fulfilled.'' Herein, however, there was no breach of the seller's agreement. Indeed, the action against defendant was based upon the theory that the seller was at all times within the period of the option ready and willing to carry out his agreement. Said section prescribes the measure of damages for a particular condition that is not found herein, but the rule applicable to the situation in this case is embodied in section 3300 or 3333 of said code. If the action may be said to be founded on contract, the former will apply; if it be regarded as based upon a tort, then the latter. It is sufficient to quote section 3300 as follows: ''For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment approximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom.'' It is well, also, in this connection to bear in mind section 3301, as follows: ''No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and origin.'' Manifestly these sections prescribe a very general measure of damages and it is not always easy to determine what particular facts satisfy the requirement of the rule.

In applying the measure to a case like this, however, the natural and reasonable inquiry is: What was the market value of similar cattle at Porterville and whether they could have been obtained by respondent after said telegram was delivered. If he could have then bought the same or similar cattle at the same price as he had promised to pay, it can hardly be said that in contemplation of law he suffered more than nominal damages in consequence of the negligence of defendant. In 37 Cyc., page 1765, the rule is stated as follows: ''If by reason of the negligence of a telegraph company in regard to the transmission or delivery of a message a purchase is defeated resulting in a loss to plaintiff, the company will be liable. The general rule is that the measure of damages is the difference between the contract price and the market value of the goods at the time and place of delivery; and where as the result of the telegraph company's negligence the purchase is not lost but

delayed, there may as a general rule be a recovery for the rise in market value of the subject matter of the sale during the delay.''

In the note to *Western Union Tel. Co.* v. *Cooper,* as reported in 10 Am. St. Rep. 772, many cases are collated in support of this general statement of the rule: ''Actual damages sustained by reason of failure, delays, or errors of a telegraph company in transmitting or delivering messages intrusted to it may be recovered by the sender when such damages are the natural and proximate result of the company's default, and may be fairly considered to have been in the contemplation of the parties when the contract was made.'' We may refer to some of the cases cited therein as illustrating the application of the rule.

In *Western Union Tel. Co.* v. *DuBois,* 128 Ill. 248, [15 Am. St. Rep. 109, 21 N. E. 4], an Illinois case, M sent through the telegraph company a message informing the plaintiff that he would sell him apples at $1.75 per barrel. The company delivered the message, stating $1.55 as the price per barrel. The plaintiff then ordered the apples, and had to pay the $1.75 to have them delivered to him. The difference was held to be the measure of his damages.

In *Hadley* v. *Western Union Tel. Co.,* 115 Ind. 191, [15 N. E. 845], the plaintiff had sold cattle for future delivery at the option of the purchaser. The latter sent a dispatch informing him that he would take the cattle on the morning of the next day. It was the custom of stock dealers to take the weight of cattle at early daylight. Through the negligence of the telegraph company to promptly deliver the message the weighing of the cattle was delayed, whereby the weight decreased. It was held that the defendant was liable in damages for the loss of weight resulting from its negligence.

In *Manville* v. *Western Union Tel. Co.,* 37 Iowa, 214, [18 Am. Rep. 8], plaintiff's correspondent sent him this message: ''Ship your hogs at once.'' The delivery of the message was delayed four days by defendant's negligence. It was held by the court that, ''The difference between the market value of the hogs on the day plaintiff could have put them on the market if the defendant had been guilty of no negligence in the delivery of the dispatch, and the market price when plaintiff was afterward able to put his

hogs into the market, is the measure of damages which may fairly be supposed to have entered into the contemplation of the parties at the time the message was delivered to defendant's operator at Chicago.''

In *True* v. *International Tel. Co.*, 60 Me. 9, [11 Am. Rep. 156], the plaintiff, in replying to an offer of a cargo of corn, sent this message: ''Ship cargo named at ninety, if you can secure freight at ten.'' The message was not delivered. The price of corn and freight advanced immediately after, and the plaintiff was obliged to buy at the advanced rate. The court held that, ''The sum, which would be compensation for the direct loss and injury sustained by the nondelivery of this message is the difference (if at a higher rate) between the ninety cents named and the sum which the plaintiffs were or would have been compelled to pay at the same place, in order, by due and reasonable diligence after notice of the failure of the telegram, to purchase the like quantity and quality of the same species of merchandise.''

In *Leonard* v. *New York etc. Tel. Co.*, 41 N. Y. 544, [1 Am. Rep. 446], the plaintiffs' agents at Chicago sent to the plaintiffs at Oswego this message: ''Send five thousand sacks of salt immediately.'' The company delivered the message reading ''casks'' instead ''sacks.'' The plaintiffs shipped the casks, but there being no market for that kind of salt in Chicago at the time, it sold for less there than it was selling for at Oswego. It was held that the measure of damages was the difference between the market value at Oswego and at Chicago, together with the transportation from Oswego to Chicago.

In *United States Tel. Co.* v. *Wenger*, 55 Pa. St. 262, [93 Am. Dec. 751], in relation to the purchase of stocks, the difference between the agreed price and the market value was held to be the measure of the damage.

In *Washington etc. Tel. Co.* v. *Hobson*, 15 Gratt. (Va.) 122, the message was in relation to the purchase of 500 bales of cotton. The message as delivered read 2,500 bales. The damage was held to be the loss sustained on the resale of the excess above that ordered.

We have found no authority holding that, in a case like this, a recovery may be had for speculative profits that

might have been enjoyed in the future if it had not been for the negligence of the telegraph company. The cases cited by appellant, as far as they relate to this point, do not support his contention.

In *Union Const. Co.* v. *Western Tel. Co.*, 163 Cal. 298, [125 Pac. 242], we find a painstaking and exhaustive consideration of various questions relating to the negligence of the telegraph company, including the contention of the defendant that the plaintiff had sustained no damage by reason of its failure to deliver a certain message in reference to a contract for the doing of certain work at a stated price. The supreme court properly held that the plaintiff was entitled to recover the difference between what it would have had to pay under said contract and what it was compelled to pay under the best contract it could secure.

In *Parks* v. *Alta California Tel. Co.*, 13 Cal. 423, [73 Am. Dec. 589], by reason of the negligence of the telegraph company in transmitting a message, plaintiff was prevented from levying an attachment to secure his claim until other creditors obtained the first attachment and exhausted the assets of the debtor. The actual damage was manifestly the amount of the plaintiff's claim and the court held that he was entitled to recover this amount.

In *Kerns & Larton* v. *Western Union Tel. Co.*, 170 Mo. App. 642, [157 S. W. 106], by reason of defendant's delay in delivering a telegram a carload of peaches did not reach their destination in time for the morning market and plaintiff was compelled to sell them at a discount. It was properly held that the measure of damage was the difference between the selling price and what they could have been sold for if they had arrived in time.

*Kerns & Larton* v. *Western Union Tel. Co.*, 174 Mo. App. 435, [160 S. W. 556], had to do with delay in delivering a telegram for the purchase of potatoes, and the rule of damages was declared to be "the difference between the price that the sender agreed to pay therefor and the sum which he would have been compelled to pay at the same place, in order, by due diligence, to have purchased a like quantity and quality of merchandise."

In *Levy Bros.* v. *Western Union Tel. Co.*, 39 Okl. 416, [135 Pac. 423], a mistake was made in transmitting a message from the owner of real estate to certain real estate

agents, whereby they were misled as to the payment of a commission, and after selling the property it was justly held that they were entitled to recover from the company the value of their services up to the time they discovered the mistake.

In *Thompson* v. *Western Union Tel. Co.*, 64 Wis. 531, [54 Am. Rep. 644, 25 N. W. 789], plaintiff lost the sale of a horse by reason of delay in the transmission of a message, and it was held that he was entitled to recover his actual loss, the sum of $25.

The main question involved in the Cooper case, *supra*, was whether "injury to feelings disconnected from all actual personal injury are exemplary damages," and it was held that they constituted an element of the actual damage and might properly be considered in determining the amount to be awarded, if the negligence of the telegraph company was the proximate cause of such injury.

It is due counsel to say that the foregoing cases are cited in support of the general scheme of plaintiff's complaint, and for that purpose they are not without value, but we have examined them to see if therein is anything inconsistent with indorsement of the measure of damages which we have declared as applicable to a case like this. Upon that point there seems to be no conflict, and we take it that the general rule as before indicated is well established.

[2] If it can be said that, under peculiar circumstances, a plaintiff who has been prevented by the negligence of a telegraph company from purchasing stock may recover as damages the profit which he might reasonably expect to derive in the future by reason of increasing their value through his own efforts, manifestly there should be allegation and proof of such peculiar circumstances. (*Acheson* v. *Western Union Tel. Co.*, 96 Cal. 641, [31 Pac. 583].) To contend with any plausibility that such theory is applicable here it would be necessary at least to show that plaintiff could not obtain said or similar cattle by the exercise of reasonable diligence. No negligence on the part of appellant would absolve respondent from the duty to exercise ordinary care to avoid injury.

No such showing was made and there is no room for the contention that he was entitled to the peculiar profits that he might have derived from pasturing and taking care of said stock.

The only substantial evidence of the market value of similar stock at Porterville at the time of the proposed purchase is found in the testimony of McLemore as follows: "Q. What was the actual market value of this band of cattle spoken of by you which you agreed to sell to Mr. Cornell for $5,000? A. They were not beef cattle. There was really no sale for them at that time. Q. Well, they had a value, a market value? A. Yes. Q. At Porterville, did they? A. Yes, I should judge they were worth between $25 and $30 a head just then." Such testimony is too indefinite upon which to base a finding. But upon the basis of the larger figure the profit would be only two dollars a head, or $340 instead of $534 as found by the court.

It is true that plaintiff testified as to the value of the cattle but it is apparent from the record that he had in view not the market but the peculiar value to him in view of prospective profits from pasturing the cattle. In fact, he had never seen the cattle and it does not appear that he was familiar with their market value. The question that he answered, over objection, was: "Now, if those cattle had been delivered and if they were of the kind which McLemore represented them to you to be, what would have been their value at that time at Porterville after delivery to you?" His answer was between $8,000 and $9,000. It is also apparent from the findings that the trial court based the conclusion as to the amount of damages upon the probable profits to be derived from pasturing the stock.

Moreover, plaintiff did not show that he could not have purchased the stock from McLemore after the telegram was delivered. It is true that he and McLemore contemplated that the sale should take place within four or five days after their conversation at Fresno. This would be before the telegram was delivered, but there seems to have been no definite agreement as to the time within which the option should continue. Indeed, the most reasonable view is that the purchase could have been made, after the message was received. He testified: "Mr. McLemore said if the San Francisco Cattle Loan Company approved my application that he would ship me the heifers immediately, that he was holding them without feed, and he wanted to get rid of them." It appears that the cattle were not sold by McLemore until some sixty days thereafter, and there is no

evidence that he was not willing to sell to plaintiff at the same price after the latter had the chance to secure the money. At any rate, before he could hold defendant for his loss in not taking advantage of the opportunity to purchase the cattle he must show that the opportunity was not still open.

Some other questions are discussed but they will probably not arise again and for that reason we forego specific consideration of them.

For the reason stated we think the judgment must be reversed and it is so ordered.

Hart, J., and Finch, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 22, 1921.

All the Justices concurred, except Angellotti, C. J., and Lawlor, J., who were absent.