KERNS & LORTON, Respondents, v. WESTERN. UNION TELEGRAPH CO., Appellant.

Kansas City Court of Appeals, May 19, 1913.

1. TELEGRAPH AND TELEPHONES: Damages, for Failure to Deliver Message Promptly. Where the suit is for violation of the defendant's violation of its public duty to promptly transmit and deliver a message, and the evidence establishes such failure, and as a direct and proximate consequence thereof loss is sustained, the defendant is liable.

2. ———: Delayed Delivery. A message was sent at 1:40 p. m. and could have been reasonably delivered by 2:15 p. m. It was delayed until 7:30 p. m. By that time it was too late, and although all parties did all they could thereafter to reduce the loss, it was inevitable, after the delay, by reason of hot weather and the perishable quality of freight; held, the failure to deliver the message promptly was the proximate cause of the loss.

3. ———: Damages: Evidence as to Elements of Loss. Although a portion of the damages is for loss of profits yet this does not prevent recovery of such loss if the items making up such loss can be ascertained with reasonable definiteness and cer-tainty. Where loss of profits have been held not recoverable, it was because they were in the nature not susceptible of definite proof, and not because of any objection to loss of profits per se.

4. ———: ———: Violation of Duty. Where the suit is on the contract to send and deliver, the damages must be such as can be said to arise naturally out of the transaction and be reasonably within the contemplation of the parties at the time the contract is made. But where the suit is in tort for

a violation of defendant's public duty the defendant is not required to have the same knowledge of the precise result likely to follow a failure to deliver as it is in a suit on the contract. Where the message shows on its face that it relates to an important business transaction, the defendant is presumed to have contemplated all damages flowing naturally and directly from a failure to perform its public duty.

Appeal from Adair Circuit Court.—*Hon. Nat. M. Shelton*, Judge.

AFFIRMED.

*Fred S. Hudson* for appellant.

(1) There is nothing in the testimony to show whether or not plaintiffs lost anything in this transaction. They were unable to state exactly the amount that they received or the amount of the freight paid, and as loss or probable or special profits are not subject to legal determination, there can be no recovery in this case. Douglass v. Stevens, 18 Mo. 362; Telegraph Co. v. Hall, 124 U. S. 444; Reynolds v. Telegraph Co., 81 Mo. App. 223; and cases cited therein. (2) The failure to deliver the message was not the proximate cause of the loss, if any. Reynolds v. Telegraph Co., 81 Mo. App. 223; Trust Co. v. Stewart, 115 Mo. 246; Harrison v. Railroad, 88 Mo. 625; Railroad v. McGrew, 104 Mo. 282; Walters v. Brown, 44 Mo. 302. (3) Before plaintiffs can recover they must show that the damages claimed must be such as may fairly and reasonably be considered as arising naturally, i. e., according to the usual course of things, from breach of contract complained of, or such as may be reasonably supposed to have been in the contemplation of the parties at the time of making the contract, as a probable result of the breach of it. Tel. Co. v. Barwist, 53 Pac. 253; Tel. Co. v. Hull, 124 U. S. 444; Primrose v. Tel. Co., 154 U. S. 1; Abeles v. Western Union, 37 Mo. App. 554; Steffen v. Railroad, 156 Mo.

336; Tel. Co. v. Schaefer, 62 S. W. 1121; Hughes v. Telegraph Co., 79 Mo. App. 137. (4) Plaintiff should have made arrangements with some one to receive the fruit on arrival and thereby decrease the loss, if any, to a minimum. Steffens v. Railroad, 156 Mo. 336; Railroad v. McGrew, 104 Mo. 291; Western Union v. Baker, 140 Fed. 315; Zumalt v. Railroad, 175 Mo. 312; Fruit Co. v. Western Union, 70 Pac. 658; Western Union v. Hart, 62 Ill. App. 120; Hasbrouck v. Western Union, 107 Iowa, 160; Little v. Hackett, 116 U. S. 371; Railroad v. Niusch, 139 S. W. 679; Brewster v. Tel. Co., 47 S. W. 561.

*Weatherby & Frank* for respondents.

(1) The duty of appellant in this case, was to transmit and deliver the message in question with ordinary care and reasonable dispatch, and for failure so to do it became liable in substantial damages for the direct and proximate consequences of its wrong. Fitch v. Tel. Co., 150 Mo. App. 156; McCarty v. Tel. Co., 116 Mo. App. 441; Reed v. Tel. Co., 135 Mo. 661. (2) The message in question on its face imports that it related to a business transaction of importance and that loss would probably result unless promptly transmitted and delivered.

TRIMBLE, J.—In this case plaintiffs sue for damages said to have been caused by the alleged failure of defendant to promptly transmit and deliver a telegram sent from Kirksville to St. Louis on July 26, 1910. The proof showed (and no controversy is made over it) that the message was delivered to the operator in defendant's office at Kirksville at 1:40 p. m.; that the usual charge for transmission was paid; that the time required to transmit and deliver a message from Kirksville to any point within the free delivery limits of St. Louis, in which limits the addressee of the mes-

sage had his office, was thirty minutes; that the message was correctly addressed to the recipient; that, had it been transmitted and delivered ·with the usual promptitude, it would have reached· the addressee about 2:10 or 2:15 p. m., but that it did not reach him until about 7:30 o'clock in the evening, when its contents were telephoned to him from defendant's office, and the message itself was delivered the next morning, July 27.

It seems that plaintiffs had ordered J. M. Patterson of St. Louis to ship them a carload of peaches from St. Louis to Milan, Missouri, over the Burlington railroad. But after the order had been given, plaintiffs, thinking a better market for them could be had at Macon, concluded to have the peaches shipped to that town instead of Milan, and to have them shipped over the Wabash instead of the Burlington. It was for the purpose of changing the route and destination of this car of peaches that the telegram was sent.

Had the message been received by the addressee at any time prior to four o'clock p. m., July 26th, it would have enabled him to bill the car over the Wabash to Macon as directed. Owing to the delay in delivery, however, the car, when the contents of the message were telephoned to the addressee, had already been started· on its way to Milan over the Burlington. The recipient of the telegram immediately upon learning its contents succeeded in having the car en route ordered dropped at Macon as it would have to go through Macon on its way to ·Milan. Had the car been sent over the Wabash as directed in the telegram, it would have arried in Macon between three and four o'clock of the morning of July 27, but as it came over the Burlington it did not arrive until ten minutes to nine of that morning.

The evidence discloses that peaches when ripe for shipment become overripe very quickly in hot weather; that they become unfit for market if not in firm and

good condition; that to enable them to be sold on the market they must be placed on sale early in the morning, as housewives will not buy them to can or otherwise preserve them in the afternoon, and, because of their liability to quickly soften, will not buy them in the middle or afternoon of one day to can or preserve the next.

Not knowing that there had been a delay in the delivery of the telegram, plaintiffs went from Kirksville to Macon at midnight of the morning of the 27th to be there in time to receive the peaches over the Wabash at four o'clock and thus get them on the early market of that day. Upon inquiry at the Wabash depot, plaintiffs learned from the agent that the St. Louis train had come but no peaches, and that no opportunity for them to come would arise until next morning. Thereupon they went to the Burlington depot and inquired for the peaches and was told by the agent they were not there, and that the train they would likely come on, if on that road at all, was already in. Plaintiffs then returned to Kirksville on the passenger train leaving Macon at 8:45 a. m. As soon as they reached their place of business in Kirksville, they were informed by the Burlington agent at Macon, over the telephone, that the peaches had arrived. They immediately returned to Macon on the next train arriving there about one o'clock p. m. of the 27th. They examined the peaches and found them in fair condition. They already had from 100 to 200 bushels sold on condition that they were firm and not overripe. But by this time it was too late to put them on the market for that day, the merchants refusing to take them for the reason that housewives would not buy in the afternoon, and there was no market nor them except in the early morning. Consequently they were compelled to wait until the morning of the next day before disposing of them. By this time they were overripe, some of them decayed, by reason of which

they were compelled to sell the peaches at a discount. It is for this loss that plaintiffs sue. A jury was waived and the case tried by the court, and a judgment rendered in favor of plaintiffs for $200.

The suit is in tort for failure to deliver a message with the exercise of care and reasonable dispatch. When such failure has been affirmatively established and there is loss sustained as the direct and proximate consequences of its wrong, the defendant is liable. [Fitch v. Telegraph Co., 150 Mo. App. 149; Reed v. Western Union Tel. Co., 135 Mo. 661; McCarty v. Western Union Tel. Co., 116 Mo. App. 441.]

It is first insisted that there is nothing in the testimony to show whether plaintiffs lost anything or not, and for this reason no recovery can be had. The grounds of this objection are that plaintiffs were not able to state precisely what they got for the peaches, nor the exact amount paid for freight, and that as the damages are for loss of profits they are too remote, contingent and speculative. It is true plaintiffs were unable to state from memory whether the freight was $100 or $200. But it was in evidence that there were 408 bushels of peaches in the car, that each bushel, crate and all, weighed sixty pounds and that the rate from St. Louis to Macon was thirty cents per hundred with $45 charges for refrigeration. From this it was only a matter of arithmetic to determine the amount of freight paid. The peaches in their overripe condition brought $436 and had cost plaintiffs, freight included, $526.44 making a dead loss of $90.44 on the purchase. In addition to this it was shown that had the peaches been in good condition when placed on the market they would have sold for seventy-five cents per bushel more than was paid for them, which with the loss on the purchase price would aggregate something near $280. So that the court's judgment for $200 was not unreasonable. The market price for peaches in good condition was shown, the plaintiff had advance

orders for 150 bushels at that price and were afterwards able to sell them all in an impaired condition and at a discount, so that it is entirely reasonable to suppose that the entire car could have been sold at the market price. The rule that damages for loss of profits are not recoverable is not based on any objection to loss of profits as such. In the cases holding them not recoverable it will be found that it was because they were not susceptible of definite proof. The elements of the loss were so uncertain, contingent and remote as to make the determination of the loss a pure guess. Where the profits depend on the business skill or ability of a person or firm, the state of the weather, the fickle favor of the public, the fluctuations of the market and such like, they are held not recoverable because no definite proof can be obtained whereby the loss can be calculated, not because they are profits. Whenever the items of such loss can be ascertained with reasonable certainty they have been allowed. [Hicks v. National Surety Co., 155 S. W. 71.]

It is true plaintiff cannot recover unless the evidence shows that the failure to deliver the message was the proximate cause of the loss. But that question was submitted to the court sitting as a jury and it found for plaintiffs. The evidence is not only sufficient to sustain this finding but there is hardly any to the contrary. The message was sent at 1:40 and could have been delivered by 2:15. It was not delivered till 7:30 that night. If it had been delivered at any time before four o'clock the car would have come over the Wabash and would have arrived in Macon between three and four the next morning in ample time for the peaches to go on the market of that day. The peaches were in good condition when they arrived but deteriorated during the enforced delay. It was proved by experienced fruit men who had dealt in peaches for several years that they are very perishable and must be handled quickly, and that in hot weather a very

slight delay in putting them on the market will cause a heavy loss. Under these circumstances the finding of the court that the failure to deliver the message in time was the proximate cause of the loss is amply sustained and cannot be disturbed.

It is urged that before plaintiffs are entitled to recover, the damages must be such as may be fairly and reasonably considered as arising naturally out of the transaction. This means that, as the telegraph company could not know from the message that perishable fruit like peaches was the subject of the dispatch, they could not have had in contemplation loss by reason of delay in receiving the car. It is true that where the action is for breach of the contract the damages must be such as rise naturally out of the breach and be such as may be reasonably within the contemplation of the parties. But where, as here, the action is in tort, or for a breach of defendant's public duty, the damages recoverable are such as might reasonably have been expected to occur under the particular circumstances. [Jones on Telegraph Companies, sec. 518.] And while there may appear to be little if any difference in these two rules yet there is some difference and it seems to be this: That in the latter class of cases the company need not have the same information of the nature of the message and the probable result which would arise on a failure to properly transmit or deliver it as it would in an action on the contract. In other words, in actions in tort, "the injured party is not limited to damages which might reasonably have been within the contemplation of the parties, but recovery may be had for all the injurious results which flow therefrom by ordinary natural sequence without the interposition of any other negligent or overpowering force." [Jones on Telegraph Companies, sec. 518; Mentzer v. Telegraph Co., 93 Iowa, 752, l. c. 760; Western Union Tel. Co. v. Dubois, 128 Ill. 248, l. c. 255.] It is said that, even in this class of

cases, to justify a recovery of substantial damages the message must show on its face that it relates to a business transaction. [Fitch v. Telegraph Co., 150 Mo. App. 149, l. c. 156.] When, however, the message discloses this fact the telegraph company is presumed to have contemplated all damages flowing naturally and directly from a failure to perform its public duty. As said in Jones on Telegraph Companies, sec. 519, "They hold themselves out as being ready and willing to transmit all proper messages tendered to them, and, as people seldom resort to these companies for their services unless the matter is of much importance and must be attended to quickly it is presumed that they will transmit the message in the exact words in which it was delivered to them, and deliver it to the addressee promptly and speedily as it is possible for them to do. This is a public duty which they owe to everyone who applies to them for services, and one which they must take daily cognizance of; and, when they fail to discharge this duty, it is supposed that they contemplated, at the time of accepting this service, the result of such failure. It is further presumed that they know—where no information is given to the contrary—that all messages delivered to them are of importance, and that great loss or injury may be the result of a failure on their part to properly discharge their duty; and that they, therefore, are supposed to have contemplated all the damages flowing naturally and directly from such failure, although they may not have had any actual knowledge of what damages might result at the time of accepting the message." The telegram in this case not only showed on its face that it related to a business transaction but also that it was of urgent importance that it be delivered at once. It read: "Am mailing certified check for amount stated. Bill car Macon via Wabash, instead Milan. Answer." We think plaintiffs, under the authorities, are not lim-

ited to nominal damages.　[McCarty v. Tel. Co., 116 Mo. App. 441, 1. c. 446.]

Lastly it is urged that plaintiffs should have made arrangements with some one to have received the fruit on arrival and thereby decreased the loss to a minimum.　But this assumes that they knew the telegram had been negligently delayed.　This they did not know. They had a right to assume that the message had been promptly delivered.　They inquired at all the depots and had investigation made along the Wabash to ascertain, if possible, where the car was.　They were not negligent in thinking the car had not been shipped. Nor did they fail to take every precaution a reasonably prudent business man would take to reduce the loss as much as possible.　As soon as they could they got to the peaches and did all in their power to sell them at once, to sort the bad from the good when they began to soften, and to obtain the largest possible amount for them.　It is said that they failed to inquire at the Burlington depot whether any other later train could bring them.　But they were told that the train most likely to bring them was already in, and there was no reason to expect them on the Burlington if the message was properly delivered.　From what has been said we think the learned trial judge held correctly in the case, and the judgment is, therefore, affirmed.　All concur.