KERNS & LORTON, Respondents, v. WESTERN UNION TELEGRAPH COMPANY, Appellant.

Kansas City Court of Appeals, November 3, 1913.

1. **TELEGRAPH AND TELEPHONES: Delay: Rise in Price: Measure of Damages.** A telegram sent from Kirksville, Missouri, to Romeo, Michigan, directed a person at the latter place to buy 600 bushels of potatoes at fifty cents per bushel and ship to the senders at Kirksville. The telegram was negligently delayed in delivery for two days, when potatoes had risen in price to eighty cents per bushel. It was *held* that on proof that the potatoes could and would have been bought at fifty cents if the message had been delivered, and that the price had advanced when it was delivered, the telegraph company would be liable for damages measured by the difference in price at the place of purchase.

2. ————: ————: **Negligence: Necessity for Purchase.** While generally it is true that a telegraph company negligently failing to deliver a telegram directing the purchase of merchandise, is liable for the difference in price at which the articles could have been purchased had there been prompt delivery, and the advanced price at which they were afterwards purchased— yet it is not necessary that a purchase be afterwards made, unless it will save or reduce the damages. For, if it be shown that a purchase would have been made at the lesser price if there had been prompt delivery and that when the belated delivery was made the price had risen, the difference between these will be a basis for assessment of damages for his loss in not obtaining the article at the lesser price.

3. ———: ———: ———: **Loss of Profits.** A telegraph company is not liable for loss of profits which might have been made out of collateral transactions, or which depend upon uncertain events. But if it is shown that merchandise ordered to be purchased by a telegraphic message were known to be intended for resale at a profit and that they could have been sold at such profit, a liability will accrue against the company.

4. ———: ———: ———: ———: **Information on Face of Telegram.** The following telegram was sent from Kirksville, Missouri, to Romeo, Michigan, and was negligently delayed in delivery, viz.: "If freight rate does not exceed fifty cents per hundred buy five or six hundred bushels of potatoes at fifty cents, if good. Make draft on us with bill of lading attached. Wire as soon as bought." *Held*, that the message conveyed information to the company, on its face, that the potatoes were desired to be purchased and shipped to Kirksville immediately and that they were intended for resale at a profit, and that the company was liable for the profit definitely shown could have been made.

Appeal from Adair Circuit Court.—*Hon. Nat. M. Shelton*, Judge.

AFFIRMED.

*Fred S. Hudson* for appellant.

*Weatherby & Frank* for respondents.

ELLISON, P. J.—Plaintiff's action is for damages alleged to have accrued to them by reason of the failure of defendant to deliver a telegram they sent from Kirksville, Mo., to E. O. Millay at Romeo, Mich. A jury was waived and a trial had by the court which resulted in a finding and judgment for plaintiffs in the sum of $180.

The telegram was delivered to defendant's agent at Kirksville, on Friday, November 10, 1911, at seven o'clock in the evening, and should have been delivered, in ordinary course, at Romeo on Saturday morning, November 11th. But it was not delivered until after

business hours on the evening of November 13th, when Millay received it through the mail. It was in the following words: "If freight rate does not exceed fifty cts. per hundred buy five or six hundred bushels of potatoes at fifty cents, if good. Make draft on us with bill of lading attached. Wire as soon as bought. Kerns & Lorton."

Plaintiffs' claim is that Millay could and would have bought potatoes on the 11th at fifty cents per bushel and could and would have obtained a freight rate to Kirksville of thirty cents per bushel. They also claimed that had the potatoes been bought and shipped at that price and rate they could and would have sold them at $1.10, thereby making a profit of thirty cents per bushel.

Defendant attacks the sufficiency of the evidence to sustain these claims. Any substantial evidence in that respect will suffice to uphold the judgment in plaintiff's favor and an examination of the record clearly shows that character of proof. Though the telegram was properly addressed by plaintiffs to Millay, it was changed to Mills. And though Millay was known to defendant's agent at Romeo, and though delivery should have been made Saturday, no personal delivery was made at all and the mail did not get it to him until Monday evening, too late for business. It is true he was absent six hours on Saturday, but this did not, as a matter of law, relieve defendant from delivering at the time he was not absent.

Defendant insists that though negligence in delivery be conceded, there was no evidence upon which an estimate of damages could be based and that the amount allowed by the trial court was merely speculation. We think the record shows the court was well justified in its conclusion. It was shown in plaintiff's behalf that if the telegram had been delivered potatoes could and would have been bought at fifty cents per bushel and shipped at a freight rate of thirty

cents. It was further shown that such potatoes could have been sold at $1.10 per bushel. There was no element in this which could legally be classed as speculative.

But it is said that though there was negligent delay in delivery, it was the duty of plaintiffs to minimize their damages by purchasing and shipping potatoes after receipt of the telegram. While it is the duty of one whom another has injured to make reasonable effort to save himself what he readily and reasonably may (Douglass v. Stephens, 18 Mo. 362; Reynolds v. Tel. Co., 81 Mo. App. 223), we do not find that the court was bound to find such condition or situation existed. But this suggestion makes it necessary to consider the proper measure of damages, and that is really the only difficult question in the case. No instructions were asked and we must, therefore ascertain if the record contains facts which will support the judgment.

Generally expressed, the measure of damages is the difference between the price that the sender of the message agreed to pay for the merchandise and the sum which he would have been compelled to pay at the same place, in order, by due diligence, to have purchased the like quantity and quality of the same species of merchandise. [Western Union Tel. Co. v. Askew, 92 Ark. 133; Western Union v. Hall, 124 U. S. 444; Squire v. Western Union, 98 Mass. 232; True v. Tel. Co., 60 Me. 9; Brewster v. Tel. Co., 65 Ark. 537.]

This statement of the rule of damages is founded upon the duty of the injured party to minimize his loss and it is varied in some instances where the facts of the particular case justify it, by the statement that the damage is the difference between the price the sender of the message was to pay if the delivery had been promptly made and the price he afterwards *actually* did pay. From this variance in statement defendant has insisted that since Millay did not make a

purchase plaintiffs are not out any money and therefore there is no data wherefrom to ascertain the difference in prices. But if the facts in the given case show that the price which the intending purchaser would have been compelled to pay on a subsequent day was higher than the price he would have paid had his telegram been delivered in proper time, we can see no necessity for having him go through the form of actually buying in order to ascertain his loss. If the proof shows he would have bought at the price named in the message, if it had been delivered in time, he would have secured property at a less price than its value subsequently when the message was delivered and he is entitled to compensation for that difference.

Again, defendant insists that in fact these rules of measurement of damage were not followed by the court, but that speculative profits which plaintiffs might have made have been taken as the basis for the judgment. The trial court may have considered the case from the standpoint of profits which would have been made on resale and we will therefore consider that phase of the case. Profits which are a matter of guess are too problematical as a measure of damage, but they may be brought within the limits of reasonable certainty and thus become the basis of an action. This we held in a recent case written by Judge TRIMBLE, in a controversy between the parties now before us: Kerns & Lorton v. Western Union Tel. Co., 170 Mo. App. 642. Here there was sufficient evidence (outside of the terms of the message itself) to uphold a finding by the court that these potatoes were to be bought by plaintiffs for resale on their arrival at Kirksville. It was shown that they had contracted a sale of one-half of the entire lot at $1.10 per bushel. In such circumstances we think loss of profits is made sufficiently certain and the judgment can be upheld on that ground; the case, we think, is brought within the exception noted by Justice MATTHEWS in Western Union v. Hall,

supra, at the close of the opinion and in Western Union v. Fellner, 58 Ark. 29; Jones on Telegraph & Telephone Companies, secs. 546-549, wherein it is stated that if the purchase intended was for immediate resale at a profit which was shown could have been made, such profit was a proper measure of damage.

But a telegraph company should be able to see and understand its importance from the telegram itself or from information otherwise given to it before a liability can attach for substantial damages. [Fitch v. Tel. Co., 150 Mo. App. 149.]    In other words, the message itself, if not otherwise known, should disclose to the company the nature of the transaction contemplated and the reasonable probability of loss if negligence follows. [Melson v. Western Union, 72 Mo. App. 111.]    It may therefore be suggested that the message was not such as to sufficiently advise defendant, as it should, of the probable or reasonable consequences which would follow from its negligence. [Fitch v. Tel. Co., supra.]    Referring to the language of the message, as set out above, we think the meaning is clear that plaintiffs were ordering a purchase of a large quantity of potatoes at a certain price, to be shipped to them and that they were to be immediately notified as soon as the purchase was made.    The fact that a business firm were the senders and that the order was for so large a quantity of such character of merchandise (beyond the necessity for individual consumption) with direction for immediate notice of purchase, could not, in reason, fail to impress defendant with the fact that it was a purchase for resale and, of course, at a profit.    In Jones on Telegraph & Telephone Companies, secs. 535, 536, many illustrations are given sustaining our conclusions.

The judgment should be affirmed.    All concur.