J. W. TIPPIN and GEORGE TIPPIN, A Co-Partnership, Doing Business Under the Firm Name of J. W. TIPPIN COMMISSION COMPANY, Respondents, v. WESTERN UNION TELEGRAPH COMPANY, a Corporation, Appellant.

**Springfield Court of Appeals, May 22, 1916.**

1. **TELEGRAPHS AND TELEPHONES:** Non-Delivery of Messages: Liability for Neglect of Employees. A telegraph company is liable for special damages occasioned by the failure or negligence of its operators or servants in receiving, transmitting or delivering dispatches, (Sec. 3334, R. S. 1909,) and this liability exists regardless of whether or not there was a completed contract between the negotiating parties to a transaction.

2. ———: Pleadings: Statement of Cause: Sufficiency. Action against a telegraph company for failure to deliver a message. Petition examined and *held* to state a cause of action.

3. ———: Failure to Transmit Messages: Measure of Damages. Action in tort against defendant telegraph company for damages on account of defendant's failure to transmit and deliver a telegram. The damages recoverable under Sec. 3334, R. S. 1909, are such as might reasonably have been expected to occur under the particular circumstances.

4. ———: ———: Damages: Forms of Action. Where a telegraph company failed to transmit and deliver a telegram, the purpose of which was to close a contract for the sale of certain apples, and where, on account of such failure, the sender was prevented from making the deal and suffered damage, the sender has two forms of action, one in tort the other in contract.

5. ———: **Failure to Transmit Message: Damage: Evidence.** Plaintiff delivered to defendant telegraph company a telegram for transmission which was an acceptance of an offer by another party to sell to plaintiff a quantity of apples at a certain price. The telegram was not delivered to the party making the offer and that person sold the apples elsewhere. Plaintiff relying on the transmission and delivery of the telegram by defendant company resold 800 barrels at a profit of 73 cents per barrel. The sale could not be completed, however, because plaintiff could not then secure the apples from the one to whom he had sent the message nor elsewhere except at the price for which he had bargained to resell. A judgment for $549.30 *held* supported by this evidence.

6. ———: ———: **Damages: Minimizing: Evidence.** Action against defendant telegraph company for damages because of failure to transmit and deliver a telegram which accepted an offer to sell 800 barrels of apples to plaintiff, which plaintiff had contracted to resell at an advanced price. Evidence examined and *held* not to show that plaintiff could have minimized the damages sustained by purchasing other apples for the resale.

Appeal from Greene County Circuit Court. Division Number Two.—*Hon. Arch A. Johnson,* Judge.

AFFIRMED.

*George H. Fearons, Albert T. Benedict, W. R. Self* and *New, Miller, Camack & Winger* for appellant.

*Patterson & Patterson* for respondents.

FARRINGTON, J.—Action for $979 damages alleged to have been sustained by plaintiffs by reason of defendant's failure to transmit and deliver a telegram. Trial by court without a jury. No declarations of law were asked or given, except a request by defendant for a peremptory instruction at the close of plaintiff's case to the effect that under the pleadings, the evidence and the law, plaintiffs were not entitled to recover anything except nominal damages—the price of the telegram—and costs, which the court refused to give. No evidence was offered by the defendant. Finding and judgment for plaintiffs for $549.30. Defendant appealed.

The petition, so far as material, is as follows:

194 M. A.—6

"Plaintiffs further state that on the 13th day of October, 1913, plaintiff, J. W. Tippin, presented at one of defendant's offices at Kansas City, Missouri, for transmission and delivery, the following message in relation to plaintiffs' business:

'Kansas City, Mo., 10/23, 1913.
'To C. L. Coleman, Aurora, Mo.

'Will give one fifty-two per hundred cwt., delivered in barrel or bulk to cars, everything except ciders and rots. One fifty is market. I add two cents as I want to handle your crop. Wire in morning. Care Blossom House.

'J. W. TIPPIN.'

"That said message was duly transmitted and delivered to the said Coleman at Aurora, Missouri, and that the said Coleman sent the following message in reply thereto:

'Aurora, Mo., Oct. 14, 1913.
'J. W. Tippin, Care Blossom Hotel,
'Kansas City, Mo.

'I will sell my apple crop at the prices you name delivered at tables. You take all apples except ciders and those having soft hail peck or rots not larger than silver dime. You do the grading, furnish barrels, and do the packing. I will haul apples to you at cars, either at Aurora or Marionville, Missouri. Answer.

'M. L. COLEMAN.'

"That said message was duly transmitted and delivered by defendant to plaintiff, J. W. Tippin, at Kansas City, Missouri, and that on the said 14th day of October, 1913, he presented the following message in reply at one of defendant's offices in Kansas City, Missouri, for transmission and delivery.

'Kansas City, Mo., Oct. 14, 1913.
'To C. L. Coleman, Aurora, Mo.

'Will accept your proposition. Be there Sunday or Monday.

'J. W. TIPPIN.'

"That defendant, its agents and employees, carelessly and negligently failed to transmit, or deliver, said last-mentioned message to the same Coleman, and that

by reason of defendant's carelessness and negligence in so failing to transmit and deliver said message, the said Coleman, believing that his proposition had not been accepted, sold his entire crop to other parties, and plaintiff lost the benefit of such deal.

"Plaintiffs further state that at the time that said last described message was presented for transmission and delivery, they paid defendant the sum of thirty cents for the service requested.

"Plaintiffs further state that there were fourteen hundred barrels of apples of the character plaintiffs attempted to contract for in the foregoing messages, and that plaintiff J. W. Tippin relying upon defendant faithfully transmitting and delivering the last-mentioned message to the said Coleman, sold eight hundred barrels of said apples, through the Collins Brokerage Company of Kansas City, Missouri, at the price of $3.25 per barrel, f. o. b. Aurora, Missouri, which would have netted plaintiffs a profit of seventy-three cents per barrel, aggregating the sum of $584." The petition then alleges that plaintiffs, believing the last-mentioned message had been transmitted and delivered, ordered a carload of barrels shipped to Aurora, and alleged damage in that connection. It is also charged that plaintiffs could have disposed of the remainder of the crop of apples at a profit. Also that plaintiffs became obligated to the Collins Brokerage Company for commission. But these last three items of damages were not included in the court's finding for plaintiffs and are not material.

The court found that the facts as to the telegrams were as alleged; that J. W. Tippin did not discover that the last-mentioned telegram was not delivered to Coleman until Sunday when he talked with Coleman by telephone, at which time he found that Coleman had sold the apples off of one forty acres of the orchard; that in the meantime and upon the filing with the defendant of the acceptance of Coleman's counter proposition, plaintiff J. W. Tippin contracted the sale of 800 barrels of number one apples, which he proposed to get out of the lot he was purchasing from Coleman, at a profit of seventy-three cents per barrel over the bulk price con-

tained in his offer and acceptance; that after Coleman learned that plaintiff had wired him accepting the counter proposition, he still offered to deliver to plaintiffs the remainder of the apples in the orchard, which the court found from the testimony would be about 450 barrels of number one apples, but that plaintiffs declined to take the remainder, assigning as a reason that they could not fill the contract for the 800 barrels of number ones they had secured through the Collins Brokerage Company and would therefore have to cancel the contract and did not care to take any; that plaintiffs made no special effort to secure other apples to take the place of those theretofore sold by Coleman, but that it is not shown that other apples could have been had in the market, other than apples that were already in cold storage; also, that plaintiffs could have secured 800 barrels of apples, which would have graded number one, out of the Coleman orchard and that they would have made a profit on said 800 barrels of seventy-three cents per barrel over the bulk price paid for them.

The defendant objected to the introduction of any evidence "because the petition does not state facts sufficient to constitute a cause of action; the petition is based upon a wrong rule of damages; and it appears from the face of the petition itself that the contract was completed between plaintiffs and Coleman, and therefore they cannot recover in this case for not getting that contract." This was overruled and exception saved, and is the basis for the first assignment of error. It is argued that the delivery of the third telegram quoted in the petition to the telegraph company completed the contract between plaintiffs and Coleman; that upon such delivery to the telegraph company at Kansas City, on October 14th, Coleman became bound, and that for any breach of that contract thereafter made, Coleman, and not defendant, was liable; and upon this ground it is urged that the petition failed to state facts sufficient to constitute a cause of action against this defendant.

The only Missouri decision cited by appellant under this contention is that of Lungstrass v. German Ins. Co., 48 Mo. 201, 204. That case simply declares the now

well-settled doctrine laid down in 9 Cyc. 295 that—
"Since agreements made by means of the post or the telegraph are simply an illustration of the general rule . . . that the offerer takes the risk as to the effectiveness of communication if the acceptance is made in the manner either expressly or impliedly indicated by him, it necessarily follows that the contract is complete as soon as the letter containing the acceptance is mailed or the telegram sent, and it makes no difference whatever that through mistake of the postoffice authorities or the telegraph company, or through accident in transmission, it is delayed or is lost and never received by the offerer," citing, besides the Lungstrass case, supra, Egger v. Nesbit, 122 Mo. 667, 27 S. W. 385; Lancaster v. Elliot, 42 Mo. App. 503; Greeley-Burnham Gro. Co. v. Capen, 23 Mo. App. 301; Whaley v. Hinchman, 22 Mo. App. 483; and Noyes v. Phoenix Mut. L. Ins. Co., 1 Mo. App. 584.

Respondents take the position that even though a contract was consummated by the parties, yet this would not relieve the appellant from an action on account of its tort; that respondents would have their election to proceed either against appellant for its tort or against Coleman for a breach of the contract; that a petition which states the delivery of a message for transmission and delivery to a telegraph company, the payment of the usual fee, and alleges negligence in the transmission or delivery of such message, states a cause of action and entitles the sender to recover all damages suffered, both general and special, citing section 3334, Revised Statutes 1909, and Bliss v. Telegraph Co., 30 Mo. App. 103; and that it is wholly immaterial whether the undelivered message consummates a contract between the sender and sendee, citing McGregor v. Western Union Tel. Co., 85 Mo. App. 308; Elam v. Western Union Tel. Co. 113 Mo. App. 538, 88 S. W. 115; and Western Union Tel. Co. v. Snow, 31 Tex. Civ. App. 275, 72 S. W. 250.

In the case of McGregor v. Western Union Tel. Co., supra, the plaintiff received a letter from one Gates offering him work as a timber estimator at five dollars per day, requesting plaintiff to answer by wire. Plain-

tiff answered by wire in these words: "I can come as P. G. Gates requested," which message when received was changed to these words: "I can't come as P. G. Gates requested." As a result of the change in the message plaintiff failed to get the position, and it was held that plaintiff was entitled to recover from the telegraph company the difference between what he would have earned under the contract and what he did actually earn at other employment. The contract was complete when plaintiff gave his reply to the telegraph company.

In Elam v. Western Union Tel. Co., supra, a wholesale dealer quoted prices on certain kinds of potatoes by telegraph to Elam, who wired his acceptance, ordering certain quantities, but the acceptance was not delivered to the wholesale dealer, and although there was a complete contract between Elam and the wholesale dealer, Elam was permitted to recover his damages from the telegraph company which was the difference in price he was compelled to pay for potatoes with which to fill outstanding orders which he had intended to fill out of this contract.

In Western Union Tel. Co. v. Snow, supra, plaintiff Snow wrote a letter to Cooper making an offer for cattle, and saying, "If I can get them, wire me at my expense and I will start or send a man at once." Cooper answered by telegram: "Offer on cattle accepted. Come on quick." There was a delay in delivering the telegram of acceptance, and Cooper sold the cattle to another, so that Snow lost the opportunity to buy 128 head of cattle for $6.50 per head when the market price at the place where they were was $8.50 per head. The telegraph company made the contention in that case, on demurrer, that the delayed telegram showed on its face an acceptance of the offer made, the effect of which was to consummate the sale of the cattle, and that Cooper was not authorized to breach the contract so made, but it was held that plaintiff could recover his damages from the telegraph company.

The case of Kenedy Mercantile Co. v. Western Union Tel. Co. (Tex. Civ. App.), 167 S. W. 1094, is fairly representative of the strongest authorities cited by ap-

pellant under this point. The Weld-Neville Cotton Company sent a message in code to the Kenedy Mercantile Company, making an offer, and on the same day the Mercantile Company deposited with the telegraph company a return telegram also in code which was an acceptance. The Mercantile Company claimed that it made shipment in compliance with its telegraphed acceptance, but that the telegraph company failed to promptly transmit and deliver the message of acceptance, so that it had to sell the commodity shipped for a less price per pound than it would have received from the Weld-Neville Cotton Company, and it sued the telegraph company for the difference as damages. The higher court upheld the action of the trial court in directing a verdict for the telegraph company, saying that the contract was complete when the Mercantile Company deposited its telegram of accepance with the telegraph company, and that its remedy was against the Weld-Neville Company.

We think this subject is governed by our statute, section 3334, Revised Statutes 1909, which expressly provides that telegraph companies "shall be liable for special damages occasioned by the failure or negligence of their operators or servants in receiving, copying, transmitting or delivering dispatches"—and that this remedy exists regardless of whether there was a completed contract between the negotiating parties to a transaction. We hold that the petition states a cause of action.

Now the plaintiffs' action is based on this statute and sounds in tort. They alleged and proved as their *special damages* the loss of profit they would have netted on a contract of sale of 800 barrels of the number one apples in Coleman's orchard. The court permitted a recovery of this anticipated profit. Appellant insisted throughout the trial and now contends that plaintiffs could recover only nominal damages; in other words, it is claimed that the court was in error as to the measure of damages adopted.

In many of the early cases of this character in this State we find the courts speaking time and again of the

rules laid down in Hadley v. Baxendale, 9 Exch., 341, as declaring the correct rules for measuring the damages for breach of contracts, and in those cases the actions were treated as actions *ex contractu.*

In Reed v. Western Union Tel. Co., 135 Mo. 661, 37 S. W. 904, the action was held to be governed by the laws of Iowa relating to the liability of the telegraph company which provided that the telegraph company would be liable for all mistakes in transmitting messages made by any person in its employment and for all damages resulting from a failure to perform any of the duties required by law. The action was based on the negligence of the company. Plaintiff's agent in Iowa wired plaintiff that he could get thirteen hundred dollars for certain real estate and said he must hear immediately. The message was delivered reading *nineteen* hundred dollars, and plaintiff wired him to sell, which he did for thirteen hundred dollars. When the plaintiff learned the facts she sued the telegraph company for the difference of six hundred dollars. The court held that the company was liable for its negligence and that the difference between the price received and the actual market value of the real estate was the proximate result of that negligence and the proper measure of damages. The court said there was no way of avoiding the damage except to sue the blameless purchaser or the negligent company and that plaintiff properly chose the latter course; and, speaking of the purchaser's position, the court said (l. c. 676): "The purchaser dealt not by means of the telegraph but directly with the agent clothed with full power to sell. His vendor had selected the telegraph as the means of communication and as between vendor and vendee the vendor should bear the loss occasioned by that means, in the absence of any evidence of fraud or knowledge of error on part of the vendee."

In McCarty v. Western Union Tel. Co., 116 Mo. App. 441, 91 S. W. 976, plaintiffs, dealers in mules at Clarence, Mo., proposed to sell them to one Pendleton of St. Louis for $135 a head and Pendleton agreed to wire on his return home whether he accepted the prop-

o.sition. On reaching home he sent this telegram: "Will give One Thirty for mules answer quick." The telegram as sent read, "Will leave One Thirty for mules answer quick." The plaintiffs inferred that their proposition was accepted, and wired Pendleton to come at once. He came and selected seventy-five head and shipped them to St. Louis, one of the plaintiffs and himself accompanying the shipment. Pendleton, supposing he had bought the mules at $130 a head, sold most of them before offering to pay the plaintiff who came along, and when he started to make payment the misunderstanding became manifest. Pendleton would only pay $130 a head for the mules, and plaintiffs sued the telegraph company. The evidence established the fact that the market value of mules on the dates of the telegrams and when they were shipped was $135 per head at Clarence, Mo. The telegraph company insisted that a demurrer to the evidence should have been given. Judge BLAND said: "Where the message shows on its face, as did the one delivered by Pendleton to the defendant, that a business transaction is contemplated and that negligence in its transmission may reasonably be attended with loss, the plaintiff is entitled to recover all damages which result to him by reason of defendant delivering to him a spurious telegram, on the principle that in actions *ex delicto* the plaintiff is entitled to recover such damages as naturally flow from defendant's negligence. In other words, the plaintiff has a right to be placed in the same position he would have been in had defendant's agents correctly transmitted the telegram. Had this been done, the mules would not have been delivered to Pendleton, and the presumption is that plaintiffs would have been able to have sold the mules at what the evidence shows was their market value at Clarence, one hundred and thirty-five dollars per head. Their loss or damage, therefore, was five dollars on each mule." Their judgment was affirmed.

In Thorp v. Western Union Tel. Co., 118 Mo. App. 398, 94 S. W. 554, the Crossan Fruit Company wired plaintiff for price on five cars of number one apples. Plaintiff replied as follows: "Two fifteen largely Ben

Davis, fifth Willow Twig, few Gano Missouri Pippin.''
The message when delivered read ''Two fifty'' instead
of ''Two fifteen.'' The Crossan Fruit Company wired
plaintiff that his price of $2.50 per barrel was too high,
and bought elsewhere. Plaintiff sued the telegraph com-
pany. It was shown that the fruit company would have
bought five carloads of plaintiff's apples at $2.15. The
court said that the proper measure of plaintiff's dam-
ages was the difference in the market price of the apples
at plaintiff's home (Weston, Mo.), the place of delivery,
and the price the fruit company was willing to pay for
them—''In other words, at what price could plaintiff
have sold them?''

There are three cases, two decided by the Kansas
City Court of Appeals and one by the St. Louis Court
of Appeals, not cited by either side, which put at rest
many of the contentions in the briefs.

In Kerns & Lorton v. Western Union Tel. Co., 170
Mo. App. 642, 157 S. W. 106, plaintiffs delivered to the
telegraph company at Kirksville, Mo., this telegram to
J. M. Patterson of St. Louis: ''Am mailing certified
check for amount stated. Bill car Macon via Wabash,
instead Milan. Answer.'' This was at 1:40 p. m. It
was delayed until 7:30 p. m. (and it could have been
reasonably delivered by 2:15 p. m.), by which time it
was too late. Plaintiffs had theretofore ordered Pat-
terson to ship them a carload of peaches from St. Louis
to Milan, Mo., over the Burlington Railroad, but after
the order had been given, plaintiffs, thinking a better
market could be had at Macon, concluded to have the
peaches shipped there, and to have them come over the
Wabash instead of the Burlington. It was for the pur-
pose of changing the route and destination of the car
of peaches that the telegram was sent. The peaches
reached Milan about nine o'clock the next morning;
whereas, if the telegram had been delivered at any time
prior to 4:00 p. m. the day it was sent, Patterson could
have billed the car over the Wabash so that it would
have reached Milan about four o'clock instead of nine
o'clock. It was shown how, by certain circumstances,
the peaches could not be put on the market that day, so

that many of them decayed and plaintiffs had to sell them at a discount, and they sued the telegraph com-- pany for the loss, in tort. It was held that the failure to deliver the message promptly was the proximate cause of the loss. What the court said on pages 647, 648, 649 and 650 as to profits and the measure of damages in this character of action is pertinent, and, as stated, answers many of the arguments made in the briefs in our case. It may be remarked that that telegram disclosed no more to the telegraph company as to the nature of the transaction than does the telegram in the case at bar. The telegram in that case was merely delayed; in our case, it was never delivered. The court in that case had to reason that if the peaches had been in good condition when placed on the market they would have sold for seventy-five cents per bushel more than was paid for them, that the market price was such that this would have been true, and that it was "entirely reasonable to suppose that the entire car could have been sold at the market price." In our case, the plaintiff had a *contract* for the apples *at the market price*— $3.25 per barrel. The court in that case held that the plaintiffs were not limited to a recovery of nominal damages against the telegraph company.

Another case is that of Kerns & Lorton v. Western Union Tel. Co., 174 Mo. App. 435, 160 S. W. 556. The court in that case, among other things, said: "Generally expressed, the measure of damages is the difference between the price that the sender of the message agreed to pay for the merchandise and the sum which he would have been compelled to pay at the same place, in order, by due diligence, to have purchased the like quantity and quality of the same species of merchandise." The evidence in our case is that plaintiffs could not have bought the same quantity at the same place, except perhaps in storage houses, and it is shown that the market price of number one apples, f. o, b. all loading stations within a radius of three hundred miles of Kansas City, Mo., was $3.25 per barrel, the price plaintiffs had agreed to re-sell for, so that in this case the result is the same whether it be said that the measure of damages is the

difference between the price plaintiffs agreed to pay Coleman and the market price of apples of like quality and quantity at the same place, or whether it be said that the measure is the difference between the cost price and what plaintiffs were to receive for them on re-sale.

The case decided by the St. Louis Court of Appeals is that of Fitch v. Western Union Tel. Co., 150 Mo. App. 149, 130 S. W. 44, which holds that the plaintiff in these cases has two forms of action—one in tort, the other on contract.

We do not agree with appellant's contention that error was committed in respect to the measure of damages.

Nor do we think, under the evidence in this record, that plaintiffs could have done anything to minimize the damages.

Upon full consideration of all the contentions made by the appellant we are convinced that the case was correctly tried and the proper result reached. Nor do we think it necessary to look beyond the law of our own jurisdiction to ascertain the state of the law on the subjects involved. The action is in tort, for a breach of the defendant's public duty, wherein the damages recoverable are such as might reasonably have been expected to occur under the particular circumstances, and not such as are allowed for breach of a contract. As said in Kerns & Lorton v. Western Union Tel. Co., 170 Mo. App. l. c. 649, 157 S. W. 106: "And while there may appear to be little if any difference in these two rules yet there is some difference and it seems to be this: That in the latter class of cases (tort cases) the company need not have the same information of the nature of the message and the probable result which would arise on a failure to properly transmit and deliver it as it would in an action on the contract. In other words, in actions in tort, 'the injured party is not limited to damages which might reasonably have been within the contemplation of the parties, but recovery may be had for all the injurious results which flow therefrom by ordinary natural sequence without the interposition of any other negligent or overpowering force.'" See, also,

a holding to the same effect by the St. Louis Court of Appeals in Fitch v. Western Union Tel. Co., 150 Mo. App. 1. c. 156, 130 S. W. 44. The message in our case disclosed on its face that it related to a business transaction—that it was the acceptance of a business proposition—as much so as the telegrams in other cases hereinbefore referred to where liability for more than nominal damages was declared. The loss of the opportunity to re-sell the 800 barrels of number one apples plaintiffs would have gotten from Coleman at a substantial profit we hold to have been the proximate result of the defendant's negligence in failing to deliver plaintiffs' message of acceptance. The fact that the deposit of the telegram with the telegraph company accepting the counter proposition made by Coleman by telegraph made a completed contract upon which Coleman might have been held by plaintiffs, does not prevent the plaintiffs electing to sue the telegraph company for its negligence. The trial court was justified in finding that there was nothing in the record to show that other apples could have been had in the market, other than apples that were already in cold storage for which the market price was $3.25, the price for which plaintiffs were to re-sell the 800 barrels, so that there was no showing that plaintiffs could have minimized the damages, even if the rule contended for by defendant is applicable to actions of this kind.

The judgment is affirmed. *Robertson, P. J.,* and *Sturgis, J.,* concur.