HARRY L. JACOBS, Respondent, v. WESTERN UNION TELEGRAPH COMPANY, Appellant.

Kansas City Court of Appeals, February 12, 1917.

1. **TELEGRAPH AND TELEPHONES:** Delay: Proximate Cause: Knowledge: Face of Telegram. A telegram was addressed to the sendee as an attorney in which it was stated that two law suits would be heard "at Ottumwa next Thursday" stating the nature of the suits and that "Counsel will have preliminary conference at Ottumwa Wednesday." The sendee had been employed as an attorney in the cases. Delivery of the message was delayed for ten days and he in consequence did not go to Ottumwa and lost his fee. It was *held* that the delay in delivery was the proximate cause of loss of the fee; and that the face of the telegram sufficiently showed the probable result of a failure to deliver.

2. ———: Contract: Breach: Damage: Proximate Cause. Where according to the usual course of things, a certain result will follow the breach of a contract, or a duty founded on contract, the damage from such result is not remote and the breach is the proximate cause of the damage.

Jacobs v. Western Union Tel. Co.

3. ———: **Interstate Commerce: Federal Decisions.** A telegram to be sent from one State to another is interstate commerce and Federal laws and decisions are of controlling influence in disposing of litigation arising thereon.

4. ———: **Limitations of Liability on Back of Message: Repeated Message.** Printed stipulations on the back of a telegram blank limiting liability for delay, mistransmission and misdelivery, of the message written thereon unless repeated, are valid. But the provision as to repeating the message will not apply where the message has been correctly transmitted, the fault being merely in neglect to deliver.

5. ———: **Stipulation: Limit to Cost of Message: Invalidity: Negligence.** A stipulation that a telegraph company will only be liable for delay in delivery for the sum paid to it for transmitting the message unless it is repeated, is not a stipulation limiting liability; but is, really, a stipulation against *any* liability for the negligence of such company, and the right to make such stipulation should not be allowed.

6. ———: **Valued Message.** The printed stipulation on the back of a telegram that the message is valued at fifty dollars and limiting all liability to that sum is valid.

7.. ———: **Printed Stipulation: Action by Sendee.** The printed stipulations on the back of a telegram limiting the liability of the company may be invoked by the company in an action brought against it by the sendee.

8. **INTERSTATE COMMERCE COMMISSION: Rates: Presumption.** It will be presumed, in the absence of a showing to the contrary, that a telegraph company has filed with the interstate commerce commission a copy of its rates, limitations, exemptions, and schedules.

Appeal from Jackson Circuit Court.—*Hon. O. A. Lucas,* Judge.

AFFIRMED (*conditionally*).

*New, Miller, Camack & Winger, Albert T. Benedict*, and *S. J. McCullough* for appellant.

*Ringolsky & Friedman* and *J. F. Aylward* for respondent.

ELLISON, P. J.—Plaintiff's action is to recover damages for wrongful negligence in defendant's failure to deliver a telegram. He obtained a judgment in the circuit court for two hundred and eighty dollars.

The telegram was what is known as a "night letter" and was in the following words:

"Cincinnati, Ohio, July 21, 1913.

To Harry L. Jacobs, Attorney,
    Kansas City, Missouri.

Two suits involving Iowa interstate liquor shipments will be heard at Ottumwa next Thursday. One suit is against United States Express Company to enjoin it from delivering shipments. In the other suit consignees for personal use are defending against seizures. Counsel will have preliminary conference at Ottumwa Wednesday. I expect to attend.
Paid.                           LAWRENCE MAXWELL."

The telegram was written on one of defendant's blanks upon which there was printed matter limiting liability. Among other limitations was one that defendant should not be "liable for mistakes or delays in the transmission or delivery, or for nondelivery for any unrepeated message, beyond the amount received for sending the same; nor for mistakes or delays in the transmission or delivery or nondelivery of any repeated message, beyond fifty times the amount received for sending the same, unless specially valued; . . . In any event the company shall not be liable for damages for any" such mistakes or delays "whether caused by the negligence of its servants, or otherwise, beyond the sum of fifty dollars, at which amount this message is hereby valued, unless a greater value is stated in writing," and an additional sum paid on such value.

It was shown that this telegram was not delivered to plaintiff until the expiration of eleven days from its date and ten days after its receipt at Kansas City. The only excuse offered for delayed delivery was that the city directory only showed a "Harry Jacobs" and not a "Harry L. Jacobs" as addressed on the message. It was further shown that plaintiff had been employed by Dancinger Brothers wholesale liquor dealers in Kansas City to attend the trial of the two suits mentioned in the telegram. Lawrence Maxwell, the

sender of the message, was attorney for the whole-sale liquor dealers association and plaintiff had arranged with him that he would keep plaintiff posted regarding the suits mentioned in the telegram. In consequence of the nondelivery of the telegram plaintiff did not attend the trials and he thereby lost his employment by Dancinger Brothers and lost the fee he should have otherwise received from them.

The issues to be considered are whether the failure to deliver the telegram was the proximate cause of plaintiff's loss; and whether the limitation clause above referred to as appearing on the back of the telegram are applicable to the facts. Other things were matters of dispute at the trial, among them, whether plaintiff had a contract with Dancinger Brothers; but there was evidence tending to show that he had, and the verdict has so determined it, and we think rightly determined it, in plaintiff's favor.

It is insisted that the failure to deliver the telegram was not the proximate cause of plaintiff's loss in that such loss could not reasonably have been within the contemplation of the parties. It may be true that the character of loss sustained by plaintiff was not within the contemplation of the sender and the company, but where the action is *ex delicto* (as here) covering a breach of public duty of which the sendee has a right to complain, any damage to him is properly allowed that flows directly and in the usual course of things from the breach of duty. In this case plaintiff's loss of a fee was not remote, it resulted directly, and in the usual course of such things, from defendant's wrongful act. [Kerns & Lorton v. Telegraph Co., 170 Mo. App. 642; Fitch v. Telegraph Co., 150 Mo. App. 149; Tippin v. Telegraph Co., 185 S. W. 539; Western Union Tel. Co. v. Lawson, 182 Fed. 369.] We have been cited to Hadley v. Baxendale, 9 Exch. 341 (S. C. 23 L. J. Ex. 179), as though that case restricted damages to such as were within the contemplation of the parties as probably to be the result of a breach. The case does not so restrict the rule.

even in actions *ex contractu.* It is said in that case that the damages must be such as were within the contemplation of the parties; but that is only half of what was said. The language was this: "Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered *either* arising *naturally,* i. e. *according to the usual course of things,* from such breach of contract itself, *or* such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it." So that the rule, as a whole, was formulated upon the idea that though certain damages might be of such character that they could not be reasonably supposed to have been contemplated at the making, of the contract, yet if they were such as could naturally and reasonbly be considered, according to, the usual course of things, to result from a breach, the party at fault would be liable for them.

But the case before us is not between the immediate parties to the contract. It is *ex delicto,* based upon a breach of duty where the basis of recovery, in common with actions *ex contractu,* is the damage naturally and in the usual course of things, flowing from such violated duty.

It is suggested that the defendant had no notice that a loss of a fee would be suffered by plaintiff in case of delay in delivery. But in our opinion the face of the telegram itself discloses that such would be the natural result. The telegram was information to defendant that plaintiff was an attorney and that he was being informed of the date when two suits would be heard and that there would be a conference of attorneys interested. It must have been known to defendant that attorneys receive compensation for services rendered and that they will not receive compensation if they fail to render the service. [West. Union Tel. Co. v. Short, 53 Ark. 434, 444.] The subject of informa-

tion disclosed by face of telegram is discussed in Kerns & Lorton v. Telegraph Co., 174 Mo. App. 435, 440. The case is wholly unlike Melson v. W. U. Tel. Co., 72 Mo. App. 111, where the message was simply: "If possible come to Shelbina in the morning," and it was held that this conveyed no information, or suggestion, to the telegraph company that it was contemplated by the sender to sell a horse upon which the sendee had a lien.

This brings us to that branch of the case relating to the limitation of defendant's liability to which we have already referred. The telegram being sent from Cincinnati, Ohio, to Kansas City, Missouri, was a transaction in interstate commerce and must be governed by the Federal law as interpreted by the Federal decisions. Congress, under its interstate commerce power, has assumed control of telegraph companies operating between the States. [36 Stat. at L. 544, chap. 309; Fed. Stat. Anno. 1912, Supp. Vol. 1, p. 111.] Federal laws and Federal decisions have thereby become the sole controlling influence in the determination of all litigation in respect thereto. They have superseded all State regulation and rule of decision wherever in conflict. [Western Union Tel. Co. v. Milling Co., 218 U. S. 406; Western Union Tel. Co. v. Pendleton, 122 U. S. 347.] "A telegraph company occupies the same relation to commerce as a carrier of messages, that a railroad company does as a carrier of goods," (Telegraph Co. v. Texas, 105 U. S. 460), and therefore the many announcements of the exclusive control of the decisions of the United States Supreme Court relating to interstate shipments, and interstate liability acts to servants engaged in interstate commerce, are applicable. [Western Union Tel. Co. v. Bank, 156 Pac. 1175; Western Union Tel. Co. v. Bilisoly, 116 Va. 562; Haskell Imp. & Seed Co. v. Postal Tel. Co., 114 Maine, 277.]

The Federal courts have ruled that stipulations set out on the back of telegraph blanks concerning

196 M. A.—20

repeated messages and lessening the amount of liability for delays, misdelivery and incorrect transmission, are valid. [Primrose v. Western Union Tel. Co., 154 U. S. 1.] But we think there is no ground in this case upon which to apply the limitation to the price of the message on account of it not having been repeated; for the reason that the mischief committed here was not in the transmission. It was correctly sent and therefore to repeat it, would not have had any tendency to lessen the ten days' delay in delivery. The message was in every way right; the wrong was in carelessness in seeking plaintiff and failing to deliver to him. There was nothing in the message that caused the delay, or that a repeating of transmission would have cured. To repeat a message will correct any error in transmission, but how it could have any influence or application to failure to deliver to the sendee is difficult to understand. In putting a message on and taking it off the wire twice the chances of mistake are greatly lessened, but we do not see where, or how, it could affect the mere matter of delivery to the sendee. That part of the company's limitation of liability for an undelivered, unrepeated message can only apply to something where repeating would reasonably tend to its benefit in the matter of delivery. Thus, if error was made in the name or address of the sendee, it would directly affect the delivery. But if the entire telegram is right in the first instance, this reason does not exist. We therefore reject the insistence that defendant's liability was limited by the endorsement on the message blank to the price of sending an unrepeated message. [Western Union Tel. Co. v. Henderson, 89 Ala. 510, 520; Railway v. Wilson, 69 Texas, 739; Western Union Tel. Co. v. Graham, 1 Colo. 230, 235; Thompson v. Tel. Co., 107 N. C. 449, 457.]

Furthermore, while it is unnecessary to decide the point and we do not do so, yet it may be suggested that, a contract limiting a telegraph company's liability merely to the charge it has collected for trans-

mitting a message is not, properly speaking, a contract at all. Such companies are public institutions compellable, for a reasonable charge, to transmit all messages properly offered. They accept a message agreeing with the sender to transmit and deliver it, and negligently fail to do so. Now a stipulation by such company that its liability is limited merely to the amount received for sending the message is not a limitation of liability, but is a declaration that there is *no* liability; since the sum paid would be due the sender by reason of the unperformed service, without such stipulation. The so-called agreement is nothing more than a claim of one sided right to wrongfully fail to perform the contract without being responsible for any damage occasioned by the wrong. It may be such stipulation would be good where the failure of the company is *unavoidable,* but to assert an unqualified release from all liability save to refund the charge collected for the unperformed service, is, in effect, to claim nonliability for negligence.

In stating reasons for upholding such stipulations, they have been likened to agreements between shipper and common carrier whereby in consideration of a rate of carriage based on a certain value, in case of negligent nonperformance resulting in loss of the property, the liability is limited to that value, such as in Hart v. Pennsylvania Ry. Co., 112 U. S. 331 and Harvey v. Railroad, 74 Mo. 538. In such instance there is a sum agreed upon as the value of the shipment, and it must be paid to the shipper as his damage; but what would be thought of a provision that he could only get back the freight he had paid for the unperformed contract?

Conceding that Congress has legislated on the question of *liability* of telegraph companies and thereby the rulings of the Federal courts have become controlling on State courts, it would not aid defendant, for we do not find that the cases cited are applicable [Primrose v. Western Union Tel. Co., 154 U. S. 1; Western Union Tel. Co. v. Hall, 124 U. S. 444;

Gardner v. Western Union Tel. Co., 231 Fed. 405; Western Union Tel. Co., v. Coggin, 68 Fed. 137.] The first of these involved an error in transmission of an unrepeated message in cipher, on account of which the plaintiff charged that he was damaged in a large sum; and the court held that the limitation of liability to cost of message was valid and applicable. The second case does not touch the question at all. It involved a rule of damages, and as the plaintiff failed to show that he had suffered any legal damage, he was permitted to recover only nominal damages. The third case was likewise without application. It is there merely decided that a provision for a sixty day limit for presentation of claims was valid. Nor is it seen where the fourth case bears, even remotely, on the question before us. The case was for error in transmission of an unrepeated message, apparently partly in cipher and involved merely a question whether any damage was shown by reason of an error when there was nothing in the face of the message or in the evidence to show that damage would probably or reasonably result from its nondelivery as written or that the sendee would have understood it if it had been delivered as written. In this connection we think it worthy of remark that if the rule limiting liability to the price paid for the message is to be enforced, why do not the courts place it squarely on that ground and stop at that, instead of ignoring such provision and seeking other reasons for finding no damage, as in Western Union Tel. Co. v. Hall, and Western Union Tel. Co. v. Coggin, supra.

The cases cited from State courts are instances where the error related to transcribing at the sending office, or transmission over the lines, or transcribing at the receiving office; instances of error in which it is readily seen that repeating would correct; though we do find at least one case where the limitation has been applied to mere unexplained or unnecessary delay. [Clement v. Western Union Telegraph Company, 137 Massachusetts 463.]

But the provision, as above set out, limiting the liability to fifty dollars for mistakes or delay in transmission, or delivery, finds application to the case and must control our disposition of it. For that was the value endorsed on the back of the message and became a part of the contract. [Donoho v. Railroad, 193 Mo. App. 610; Wright v. Railroad, 181 Mo. App. 137; Adams Express Co. v. Croninger, 226 U. S. 491; Hart v. Railroad, 112 U. S. 331; Boston & M. Railroad v. Hooper, 233 U. S. 97.]

And the fact that this action is brought by the sendee of the message does not prevent the defendant company from claiming the benefit of the limit of recovery. It is true the action is not between the immediate parties to the contract. But the contract created a duty of prompt delivery by the company, for a violation of which the sendee may maintain an action sounding in tort. He gets his action through the instrumentality of the contract, and out of which his right must arise. He must therefore accept the provision of the contract which limit the undertaking of the company. [Gardner v. Western Union Tel. Co. 231 Fed. 405; Findley v. Western Union Tel. Co., 64 Fed. 459; Whitehill v. Western Union Tel. Co., 136 Fed. 499; Western Union Tel. Co. v. Bank, 156 Pac. Rep. 1178; McGehee v. Western Union Tel. Co., 53 Southern 205; Frazier v. Western Union Tel. Co., 45 Oregon, 414; Stone & Co. v. Postal Tel. Co., 31 R. I. 174.]

Plaintiff to save himself from the application of the law which defendant has invoked against the judgment, claims that when Congress placed telegraph companies within the provisions of the interstate commerce act as common carriers, they became subject to the same regulations and restrictions applicable to other common carriers and that as the latter carriers are required to file with the Interstate Commerce Commission and print and keep open for inspection schedules, showing rates and charges for transportation, so telegraph companies should do likewise.

It seems that the Interstate Commerce Commission (25 Annual Report, page 5) has decided that section 6 of the Interstate Commerce Act requiring other common carriers to print and file with that commission its rates, charges, etc., does not apply to telegraph companies. But it appears that the Federal Court of Appeals has decided differently. [Gardner v. Western Union Tel. Co., 231 Fed. 405, 409.] Under the latter decision plaintiff insists that as defendant did not show compliance with these requirements, it did not bring itself within the protection of the law we have referred to in its behalf. We need not stop to discuss the conflict between the Commerce Commission ruling and the Federal decision. For, conceding that the schedules, rates and charges should have been filed, it will be presumed they were, and the *onus* is on plaintiff to show they were not.

It is true that it has been held in some of the States to be necessary for the carrier to make this showing. But late cases in the supreme court of the United States show that not to be the view of the Federal Courts; and it is held, directly, that the presumption is to be indulged, in the absence of a showing to the contrary, that the carrier has complied with the law in filing with the Interstate Commerce Commission its schedules, rates, charges, exemptions, etc., as required by the law. [Cinn. & Tex. Pac. Ry. Co. v. Rankin, 241 U. S. 319, 326; N. Y. C. & H. R. Ry. Co. v. Beaham, 37 S. C. Rep. 43 (U. S. Sup. Ct.).]

Many of the points involved in this case are also discussed in an opinion by Judge TRIMBLE in Poor v. Western Union Tel. Co., promulgated at the same sitting at which this is announced. The result of the foregoing considerations is that plaintiff is limited to fifty dollars as the agreed value of his message. The judgment will therefore be affirmed if he will remit down to that sum within ten days; otherwise it will be reversed and cause remanded. Costs of appeal against the plaintiff. All concur.